(5 Misc. Rep. 199.)

### In re JONES' WILL.

#### (Surrogate's Court, Cattaraugus County.    October 6, 1893.)

1. WILLS—TESTAMENTARY CAPACITY—DRUNKENNESS.
    The fact that testator was 83 years old when he made his will, and had for many years been addicted to the excessive use of intoxicating liquor, does not show a want of testamentary capacity, where it appears that he was sober when he executed the will, and many witnesses testify that he was of good business ability when sober, though several other witnesses describe certain acts and statements of testator, and characterize them as irrational.

2. SAME—DELUSION AS TO PROPERTY.
    Declarations of testator that he had more property than any one knew of, that he had enough to make all his relations rich, and that, if he could have a certain girl for his wife, he would give her "a necklace of $20 gold pieces that will go round her neck and reach to the ground," do not show an insane delusion as to the amount of his property.

3. SAME—LICENTIOUSNESS.
    The fact that testator, who was an old man, was of a licentious nature, indecent in conversation, and fond of boasting of amorous exploits, does not show a want of testamentary capacity, as moral insanity does not constitute legal incapacity.

Application for the probate of the will of Squire B. Jones, deceased.    Granted.

C. Z. Lincoln, for proponent.
V. C. Reynolds and G. W. Cole, for contestant.

DAVIE, S. Testator died at the town of East Otto, Cattaraugus county, on the 20th day of December, 1892, at the age of 84 years, without children or descendants, leaving a will dated and executed on the 13th day of September, 1888, whereby he devised and bequeathed his entire estate to the proponent, who was his second wife, and whom he had married about one year prior to the execution of the will. The contestant is a nephew of testator, and the only reason urged for denying probate to the will is the alleged want of testamentary capacity; and testator's advanced age and long-continued habits of intemperance are assigned as the cause, and a peculiar delusion as to the extent and value of his estate, together with frequent exhibitions of lascivious and licentious propensities and inclinations are shown as the result, and as the evidence, of such mental impairment. The proof undoubtedly discloses marked mental peculiarities on part of testator, and the inquiry is whether, at the time of the execution of the will, he possessed testamentary capacity. It is, of course, a fundamental principle that a sufficient mental capacity in the testator—that is, a sound and disposing mind and memory—is essential to the validity of any will. It is, however, impossible to formulate any accurate and comprehensive definition embracing all instances of mental unsoundness which incapacitate from making a will. It is provided by statute (2 Rev. St. c. 6, tit. 1, art. 1, § 1) that all persons except idiots, lunatics, infants, and persons of unsound mind may make a will of real estate; but the courts have not construed this statute literally and arbitrarily, by holding that all grades and degrees of mental unsoundness disqualify from making a will, nor do the decisions attempt to establish any particular standard of mental vigor or ability requisite for that purpose. The courts have simply endeavored to establish certain very general propositions, leaving the application thereof to be governed by the particular facts and circumstances of each individual case. Thus, it is asserted as a general rule that one who is not a lunatic or idiotic, and is "compos mentis," within the legal meaning of that term, is competent to make a will, (Delafield v. Parish, 25 N. Y. 9;) that one capable of comprehending the condition of his estate and his relations to those who are the natural objects of his bounty, and able to collect and retain in his mind, without prompting, the elements of his business, possesses testamentary capacity, (Van Guysling v. Van Kuren, 35 N. Y. 70;) that no presumption against the validity of a will springs from the fact of an enfeebled condition of mind or body, (Horn v. Pullman, 72 N. Y. 269;) or from the fact that the terms of the will are harsh and unjust, and the natural objects of testator's bounty get less under the will than in case of his death intestate, (In re Tracy, 11 N. Y. St. Rep. 103;) and that mere weakness and failing memory on part of testator are insufficient to invalidate his will,

where it appears that he comprehended the nature of his testa-mentary acts, and expressed a desire that his will should be drawn by a certain person, in whom he had great confidence, and dis-posed of his property without prompting, (In re Stewart's Will, 59 Hun, 618, 13 N. Y. Supp. 219.) The evidence in this case shows quite clearly that the testator had for many years been addicted to the use of intoxicating liquors. The expressions of the various witnesses who had known testator intimately establish that fact. They say, quoting from their testimony:

"He liked whisky; drank to a considerable extent." "He had spells when he was intoxicated right along, and then it would be several weeks before he would have another spell." "At times he would drink quite hard for a day or two." "During the years 1888 and 1889 he drank considerable." "He became intoxicated oftener in the summer than in the winter. He would commence in bee time, and drink all the time. He used to keep a lot of bees, and would drink all the time he was hiving them." "After his first wife died, until he married again, he drank worse." "I have seen him when I thought he was crazy, hollering and yelling. The old lady came after me, and I went and milked the cows, and then led him to the house, and put him to bed. He went to milk, but couldn't." "I have heard him hollering and yelling about the place when he was having one of his spells." "During the season of 1888 he was drunk half the time. He kept liquor in the house. In the month of September of that year he was drunk half the time." "Question. Do you know of his doing any business himself during the summer of 1888? Answer. No. When he was sober he seemed quite stupid. He did not act as though he knew anything. Q. How do you know that? A. I saw him every day. When he was sober he would sit or lie on the veranda; didn't talk much. Q. What makes you think he was stupid when sober? A. He acted like some old person who was foolish,—as though he hardly knew anything."

It therefore becomes necessary to determine what particular significance probate courts have given to evidence of this char-acter. Blackstone states the English rule to be that—

"Mad men, or otherwise non compotes, idiots, or natural fools, persons grown childish by reason of old age or distemper, such as have their senses be-sotted with drunkenness, are incapacitated, by reason of mental disability, to make any will so long as such disability lasts."

Again, it is said—

"That he that is overcome by drink, during the time of his drunkenness, is compared to a madman, and therefore, if he make his testament at that time, it is void in law, which is to be understood when he is so excessively drunk that he is utterly deprived of the use of his reason and understanding; other-wise, albeit his understanding is obscured and his memory troubled, yet he may make his testament, being in that case." Gore v. Gibson, 13 Mees. & W. 623; 1 Jarm. Wills, p. 97; Shep. Touch. 403.

The principle established by the earlier cases is to the effect that the fact that a person is addicted to the habits of intoxi-cation, even to such a degree as to suffer from mania a potu, cannot be held to invalidate a will, unless it be clearly shown that the will was made during a period when the reason was actually dethroned from that cause; that no presumption of incapacity arises from the fact that the testator had at some previous time been absolutely incapacitated by intoxication for a testamentary act, or even from the making of a contract or the

performance of business; that the acts of such a person will not be held invalid unless it be proved that he was so deprived of his faculties as to be incapable of understandingly performing the act, or of giving free consent, or was so far overcome by intoxication as to be practically under the control of some other person. Flood, Wills, 391; Walker, Wills, 113; Wheeler v. Alderson, 3 Hagg. Ecc. 574; Ayrey v. Hill, 2 Addams, Ecc. 206. The authorities cited have received the sanction of, and been followed by, the courts of this state. In the case of Peck v. Cary, 27 N. Y. 9, where the will of a confirmed drunkard was sustained, although made after a protracted debauch, and where the testator drank several times during the day of the execution of the will, the court says:

"It is not to be understood that a will made by one who is at the time under the influence of intoxicating liquor is for that reason void. Intoxication is said to be temporary insanity. The brain is, at the time, incapable of performing its proper functions, but that species of derangement ceases when the exciting cause is removed, and sobriety brings with it a return of reason. In order to avoid a will made by an intemperate person it must be proved that he was excited by liquor, or so conducted himself during the particular act as to be at the time legally disqualified from giving effect to it."

In re Schreiber's Will, (Surr.) 5 N. Y. Supp. 47; In re Tracy, 11 N. Y. St. Rep. 103; In re Watson's Will, (Sup.) 14 N. Y. Supp. 465; In re Peck's Will, (Sup.) 17 N. Y. Supp. 248.

Then the important question in this case, is to determine the condition of the testator at the particular time of making the will. It will be observed that none of the witnesses to whose evidence reference has been made assume to speak of testator's mental condition at the time of the execution of the will. The only evidence upon that subject is given by the attesting witnesses and the scrivener who drew the will. On the day preceding the execution of the will, the testator went to the residence of Mr. Laing, a neighbor, who had had considerable experience in preparing and superintending the execution of wills, and asked him to prepare his will, telling him what disposition he desired to make of his property. The will was accordingly drawn on the same day, in the absence, however, of testator, and on the following day Laing took the will to the residence of testator, and in the presence of one of the attesting witnesses read it over to testator, who expressed his entire satisfaction with it, and, suggesting that he could not write, requested Laing to sign the will for him, which Laing did, testator making his mark, and thereupon all the formalities necessary to the due execution of the will were carefully complied with. Laing, who is evidently a conscientious and entirely disinterested witness, testifies distinctly and unqualifiedly that testator was sober at the time, and in this he is fully corroborated by the evidence of each of the attesting witnesses, who assert that the testator was, at the time of the execution of the will, of sound mind, and competent to transact business.

But it is further urged on the part of the contestant that the evidence shows that testator was possessed of an insane delusion

as to the extent of his property. It is shown that he was accustomed to speak of his estate with great exaggeration, saying that he had more property than any one knew of, and that he had enough to make all his relatives rich. The witness Brown testifies:

"He [the testator] asked me if he could have my daughter. He said he wanted her. I asked him what he wanted her for, and he said for his wife. I laughed, and said, 'What is the matter with you?' and he said, 'If you will give me the girl, I will make her a necklace of twenty dollar gold pieces that will go round her neck and reach to the ground; one that she can jump through.' I told him I would not trust my girl with him."

Other evidence indicates that testator was of a licentious nature, vulgar and indecent in conversation, passionately fond of narrating his amorous exploits, speaking of his liaisons publicly and boastingly. The inference is fairly justified by the evidence that the testator was either a notorious romancer or a veritable Don Juan; but eccentricities of habits or perversion of feelings and conduct, forming what is termed "moral insanity," do not constitute legal incapacity. 1 Jarm. Wills, p. 75. The law, recognizing the fact that proof of moral depravity does not necessarily establish a lack of intellectual ability, does not require any particular grade of moral rectitude as an element of testamentary capacity. Even pronounced insane delusions, if they do not relate to, or directly bear upon, the testamentary act, do not invalidate a will. Cases illustrating the proposition are numerous. Colt v. Patchen, 77 N. Y. 533; Society v. Loveridge, 70 N. Y. 387; Van Guysling v. Van Kuren, supra; Thompson's Case, 21 Barb. 107; Forman's Will, 54 Barb. 274; Bonard's Will, 16 Abb. Pr. (N. S.) 128; In re MacPherson's Will, (Surr.) 4 N. Y. Supp. 181. Several witnesses on part of the contestant have described certain acts and statements of testator, and characterized them as irrational, but such expression of opinion affords no evidence of mental unsoundness. In re Rapplee's Will, (Sup.) 21 N. Y. Supp. 801. No reliable estimate of one's mental condition can be predicated upon isolated and independent acts. It is the entire line of conduct, each act examined with reference to that which preceded and that which followed it, which indicates whether the man is controlled by the dictates of sense and reason, or by the illusions of a disordered mind or imagination. Many witnesses who were called on behalf of the proponent, and who had known testator for many years, speak of him as a man, when not under the influence of liquor, of good business ability and understanding, competent in every respect to transact business, and shrewd in the management of his affairs. A careful examination of all the evidence leads to but one conclusion,—that testator, at the time of the execution of the will in question, possessed testamentary capacity, and consequently the will must be admitted to probate. A decree will be accordingly entered.