THE INDIANA NATURAL AND ILLUMINATING GAS COMPANY *v.* THE NEW HAMPSHIRE FIRE INSURANCE COMPANY.

[No. 2,747.   Filed April 19, 1899.   Rehearing denied Nov. 21, 1899.]

NATURAL GAS.—*Negligence of Company.—Insurance.*—A complaint by an insurance company against a natural gas company, charging that certain property insured by plaintiff was destroyed by fire by reason of the carelessness and negligence of defendant in failing to provide a night watchman to control the supply of gas, without fault of the owner, and that plaintiff had paid the loss and had been subrogated to the rights of the owner, states a cause of action. *pp. 298-300.*

EVIDENCE.—*Natural Gas.—Negligence of Company.*— In an action against a natural gas company for damage to property by fire caused by an overheated stove on account of the alleged negligence of defendant in failing properly to regulate the supply of gas, proof that on the night of the fire other consumers noticed that their stoves were overheated was improperly admitted, where it was shown that the mixers furnished consumers were of different sizes, some admitting more gas than others, and that there was a key under the control of each consumer with which he could regulate the flow of gas into his stove and turn it off entirely. *pp. 301-305.*

From the Montgomery Circuit Court.   *Reversed.*

*Benj. Crane* and *A. B. Anderson,* for appellant.
*A. D. Thomas* and *W. T. Whittington,* for appellee.

WILEY, J.—Appellee was plaintiff below, and, from its complaint, it appears that appellee was an insurance company engaged in the business of insuring property against loss by fire, and had issued a policy of insurance upon certain property belonging to one Patrick Slattery. Appellant was engaged in furnishing natural gas for heating and illuminating purposes, and said Slattery was one of its patrons. The property which appellee had insured was a house and household furniture.

It was charged in the complaint that within a few days prior to June 7, 1897, appellant, in the exercise of due care,

Indiana, etc., Gas Co. *v.* New Hampshire Ins. Co.

had been accustomed to, and did, keep a watchman during the night, which was necessary to prevent accidents and the communication of fire to buildings into which gas was con-. veyed and supplied, and whose duty it was to observe and regulate, through proper machinery and appliances, the pressure and supply of natural gas, so that the pressure and supply would not become too .great during the night, and thereby prevent excessive and over-heating of stoves, and thereby to prevent the communication of fire by such excessive heating to buildings, etc. That on June 7, 1897, appellant carelessly and negligently failed to keep such watchman on guard and duty, and, in consequence thereof, the pressure and supply of gas became very great and excessive, and beyond all reasonable demand; that thereby the supply of gas in the cooking stove in the dwelling-house of said Slattery became so great and excessive during the night, when the members of his family were asleep, that it communicated fire to said dwelling, burning the same and its contents, and that by reason thereof appellee was compelled to, and did, pay to said Slattery, on account of said insurance policy, the damage to his said property occasioned by said fire, in the sum of $470.16; that said fire and damage were caused without any fault or negligence of appellee or said Slattery, and wholly on account of the negligence and fault of appellant, in not having and keeping a watchman on guard as aforesaid. It further appears from the complaint that in said insurance policy there was a clause which provided that if appellee claimed that the fire was caused by the act or negligence of any other person, or corporation, then on payment of the loss by appellee, it should be subrogated to all right of recovery by the insured, and that the insured should assign such right to appellee; that said Slattery did, at the time of the payment of the loss to him, make such assignment. The clause in the policy to which we have referred, and the assignment of Slattery, are copied bodily into the complaint. Slattery was made a party defendant to answer as to his interest, if any, and suffered a default.

Appellant demurred to the complaint for want of sufficient facts, which demurrer was overruled. The case was put at issue by an answer in general denial, trial by jury, and a general verdict for appellee. Appellant's motion for a new trial was overruled, and, by its assignment of errors, the overruling of the demurrer to the complaint, and the overruling of the motion for a new trial, are respectively challenged.

The right to maintain the character of an action declared upon in the complaint is clearly recognized in this and other states. In *Phoenix Ins. Co. v. Pennsylvania R. Co.*, 134 Ind. 215, 20 L. R. A. 405, the subject is ably discussed and authorities collected.

Appellant's learned counsel, in their brief, have not, in our judgment, pointed out any defects in the complaint. This court in *Alexandria Mining, etc., Co. v. Painter*, 1 Ind. App. 587, held, and correctly, as we think, that a company, or corporation, which furnishes natural gas to consumers, and negligently increases the pressure of gas in the consumer's pipe so beyond the accustomed pressure that it overheats the stove of the consumer, and without his fault sets fire to his property and destroys it, he may recover damages occasioned thereby. And as an insurance company which has paid the loss may be subrogated to the right of the consumer, it may recover the amount required to be paid by it under its policy.

The complaint before us states a cause of action, in that it shows that appellee had insured Slattery's property; that it was destroyed by the carelessness and negligence of appellant, without any fault of Slattery or appellee; that it had paid the loss, and had been subrogated to the rights of Slattery. The complaint charges that appellant negligently failed to provide a watchman at night, so that he might control the increase and supply of gas, and that the services of such watchman were necessary for that purpose. The demurrer to the complaint was properly overruled.

This leaves for our consideration the questions presented by appellant's motion for a new trial. The motion for a new trial is based on alleged errors in admitting and rejecting certain evidence, and in giving and in refusing to give certain instructions, and that the verdict is contrary to law, and not sustained by sufficient evidence.

As to whether Slattery's property was destroyed by overheating the stove and pipe, occasioned by excessive pressure and supply of gas, or by reason of a defectively constructed stove-pipe and flue, is a disputed question of fact; and as there is evidence in the record which supports the conclusion reached by the jury, to wit, that the fire was occasioned by the latter means, we cannot disturb the verdict on the evidence. The evidence shows that Slattery's property, which was destroyed by fire, was in the city of Crawfordsville, and that appellant piped to said city gas for use by its patrons and consumers, from the gas fields near Noblesville; that it was conveyed through an eight inch main, and that the pressure was uniform to all consumers. Appellee introduced a number of witnesses residing in different parts of said city of Crawfordsville, who were patrons of appellant, to prove that on the night Slattery's property was burned, their stoves became unusually hot about the time the fire at Slattery's occurred. To all this evidence, appellant objected, and over its objection, the court admitted it.

It will be unnecessary to set out or refer to all such evidence, for it is all of the same character in effect, and the examination of the evidence of one of the witnesses upon the subject will suffice. Michael Collins was called as a witness by appellee. After directing his attention to the night of the fire at Slattery's, he was asked and answered the following questions: "Q. I will ask you if you remember that night about the fire and alarms that were given? A. Yes sir. Q. I will ask if you observed that night your stove, did you see your stove at any time during that night after 12 o'clock, or at any time? A. Between one and two

o'clock. Q. What was the condition as to shedding heat or otherwise?" To this last question, appellant objected, and the objection is fully stated in the record. The objection was overruled, and the witness answered: "Oh yes, it was pretty warm." By other questions and answers, it was shown that the stove was red hot. Appellant urges that the question it objected to was an improper one, because it was an inquiry in reference to another transaction, place, and fire, and for the further reason that the means through which gas is distributed is under the immediate control of the person or persons using it, by reason of which there could be no question made as to whether the fire occurred under the same circumstances and at the same time mentioned in the complaint. It was said in *Evansville, etc., R. Co.* v. *Keith*, 8 Ind. App. 57: "The correctness of a ruling on the admission or exclusion of evidence depends, in a large measure, upon the issues, and the other evidence then in hand." In the case we are considering, the controlling issue, or question, was the alleged negligence of appellant in permitting an unreasonable and unnecessary pressure of gas to flow, resulting in the damage complained of. Upon this question, appellee had the burden, and it was bound to prove, to make out its case, such alleged negligence. It was in evidence that the pressure of gas throughout the city of Crawfordsville was uniform; that the pressure was controlled and regulated by automatic machinery and appliances at two different stations, one immediately outside the limits of the city, and the other within the city; that for a long time before the fire, appellant had kept a night watchman, whose duty it was to attend the machinery and control the pressure of gas; that the services of such watchman were necessary to that end; that a short time before the fire, his services in that regard were dispensed with, and that at the time of the fire there was no such watchman on duty. It was also in evidence that the "mixers" in their undisturbed or natural conditions were not of the same size, and that some of them

would admit more gas than others. While the evidence shows that the supply of gas in the mains and the several branches thereof was under the management and control of appellant, yet it is shown that at each stove or place of using, there was a key under the management and control of the consumer, by which he could regulate the flow of gas into his stove, or other place of consumption, and could turn it off entirely. With this issue and the facts before us, we are to determine the correctness of the ruling of the trial court in admitting the evidence complained of. In the discussion by counsel, we are referred to the rule in actions against railroad companies for negligence in destroying property by fire, that it is proper to admit evidence as to other and distinct fires, originating from passing locomotives. That rule is bottomed upon the supposed unity of management and similarity in the construction of engines, and has been held admissible as tending to prove the possibility and a consequent probability that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. This was the reasoning by the Supreme Court of the United States in *Grand Trunk R. Co.* v. *Richardson*, 91 U. S. 454, and has been followed in this State. *City of Delphi* v. *Lowery*, 74 Ind. 520, 39 Am. Rep. 98. See, also, *Evansville, etc., R. Co.* v. *Keith*, 8 Ind. App. 57, and cases cited.

It does not seem to us that the rule declared in fire cases against railroad companies, and that contended for by appellee, are at all parallel, or based upon the same principles. The same reasoning will not apply, for the reason they are not founded upon the same basis. The difference to our minds is clear and marked. In the class of railroad cases referred to, the company owns and controls the right of way, and is charged with the duty of keeping and maintaining such right of way in a reasonably safe condition. It also owns, runs and operates its locomotives. It is required, in the discharge of its duty to the public, and others, to use

machinery of approved patterns in all their appointments, and to keep the same in reasonable repair. No one save the servants and agents of the company has any control, management or supervision of the right of way, its locomotives, or machinery. Not so in the use of natural gas. In the first instance, it is under the management and control of the company that furnishes it to the consumer. The company conducts it in mains and branches to the point where it is used, and to that point it has absolute control of the pressure and supply. For one consumer, it furnishes a certain "mixer" of a given capacity, and for another, a "mixer" of a different capacity. In each instance a key is attached whereby the consumer is given absolute control over the flow of gas. He can shut it off entirely, or regulate its flow and supply at will. The gas used by the consumer is used upon his own premises, and aside from the general pressure and supply furnished by the company, the company has no more control over it than a stranger. At any time a stove might become overheated by turning the key so as to admit of the full pressure of gas. Another fact, to which we can not close our eyes, because it is one of common knowledge and every day experience, is, that during the night, when many gas fires are shut off, or turned down low, the general pressure increases. Of the several witnesses who were permitted to testify to the condition in which they found their stoves on the night of the Slattery fire, in no one instance was it shown what character or size of "mixer" was used, or whether the gas was turned partially off by their respective keys, or whether they were burning the full volume of gas, which would flow through their burners uncontrolled by the key, or whether their connecting or distributing pipes were the same, etc. The mere fact that other stoves in other parts of the city, receiving their supply of gas from the same source, were on the night of the Slattery fire, red hot and dangerous, cannot be legitimately considered as having any bearing upon the question we are considering, at least, until it is first

shown that the conditions were the same as those of the Slattery stove. This exact question was decided by this court in the case of *Washington Township, etc., Co.* v. *McCormick*, 19 Ind. App. 663. Robinson, J., wrote the opinion of the court in that case, in which he collected many authorities, and the conclusion reached is supported by all the adjudicated cases, and the reasoning is so clear and strong that it becomes convincing. We cannot add anything to what was there said, and feel fully justified and contented by citing that case and the cases therein cited as controlling the question here discussed.

If the conditions as to the stoves of all the witnesses were the same as compared to the stove of Slattery, i. e., if the "mixers" were the same, and the keys were all turned so as to admit of the same supply of gas, and the pipes and connections were the same, then a different question would be presented, and it would rest upon a different principle; but that question is not before us for decision, and we express no opinion. Under these facts, and the rules of evidence established by text writers and the authorities, the evidence complained of was incompetent, and it was error to admit it. Other questions are discussed, arising under the motion for a new trial; but under the conclusion we have reached on the admission of the evidence discussed, they are not likely to arise again, and they need not here be decided.

For the error pointed out, the judgment is reversed, with instructions to the court below to grant appellant a new trial.