## THE INDIANA NATURAL AND ILLUMINATING GAS COMPANY *v.* LONG.

[No. 3,268. Filed Feb. 14, 1901. Rehearing denied June 27, 1901.]

APPEAL AND ERROR.—*Trial.—Verdict.—Interrogatories.*—The general verdict must stand against a motion for judgment on answers to interrogatories, unless such answers are in irreconcilable conflict with the general verdict. *p. 222.*

SAME.—*Verdict.—Interrogatories.—Evidence.*—In determining the right of the moving party for judgment on answers to interrogatories as against a general verdict, the Appellate Court cannot consider what evidence was introduced upon the trial, but simply what evidence might have been properly offered under the issues, and for this purpose may examine the pleadings. *pp. 222, 223.*

PLEADING.—*Complaint.—Negligence.—Allegation of More Facts Than Necessary.—Gas.*—A complaint in an action against a natural gas

Indiana, etc., Gas Co. *v.* Long.

company to recover damages for the loss of a house and other property caused by fire by reason of an increased gas pressure, alleging that the gas entered the mains at a pressure of 250 pounds to the square inch, that for the purpose of reducing the pressure so that gas could be used for domestic purposes regulators were used, that it was the duty of defendant constantly to oversee its appliances for reducing the gas, and that defendant wholly failed and neglected to watch the same on the night of the fire, the agent of the company in charge thereof having become intoxicated and abandoned the work without leaving any person in charge thereof, shows actionable negligence, and averments therein that the regulators and appliances for regulating the pressure were out of repair were not essential to make the complaint good. *pp. 223-226.*

GAS.—*Fires Resulting from High Pressure.—Inspection.—Damages.—* Where a gas company negligently permits the pressure to increase to the extent that it overheats the stoves.of its consumers, without the consumers' fault, so that damages result, such act is a positive wrong, and actionable, and it is not sufficient to relieve the gas company from liability for it to show that its regulators, etc., were in good repair and in working order, but it must go further and show that it had maintained an efficient system of inspection. *p. 226.*

SAME.—*Pressure.—Evidence as to Other Stoves.—*The rule that in order to render evidence as to the pressure of gas in other houses admissible in an action for damages from fire resulting from increased gas pressure it is necessary to show that the general conditions of the other stoves were in essential respects similar to the one that caused the injury is not so rigid as to require that the exact conditions prevailed. *pp. 227-230.*

APPEAL AND ERROR.—*Harmless Error.—Admission of Improper Evidence.—*Where it appears from the record that a correct result was reached and substantial justice done between the parties, a judgment will not be reversed because of the admission of improper evidence which was harmless to the complaining party. *p. 231.*

From Boone Circuit Court; *G. N. Beamer,* Special Judge.

Action by Emma G. Long against the Indiana Natural and Illuminating Gas Company for damages from fire resulting from high gas pressure. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter* and *S. R. Artman,* for appellant.

*O. P. Mahan, H. P. New* and *T. J. Terhune,* for appellee.

Indiana, etc., Gas Co. *v.* Long.

WILEY, J.—Suit by appellee against appellant to recover damages for the loss of a house and other property by fire, which fire, it is averred in the complaint, was caused by the negligent act of the appellant in suddenly and without warning increasing the pressure of the gas in its low pressure main, so that the stove of appellee's tenant was overheated and her house, etc., burned. As counsel have not discussed any question as to the sufficiency of the complaint, we need not refer to it further at this time.

The cause was put at issue by an answer in denial, trial by jury, resulting in a general verdict for appellee, and a special finding of facts by way of answers to interrogatories. Appellant moved for judgment on the answers to interrogatories and for a new trial. Both of these motions were overruled, and such rulings present the only questions discussed.

Counsel for appellant first discuss the overruling of the motion for judgment. Both the complaint and the answers to interrogatories show that appellee's house, at the time of the fire, was occupied by a tenant. For the purpose of determining the correctness of the court's ruling on the motion for judgment on the answers to interrogatories, the essential facts found by the jury may be stated as follows: That appellant's gas plant, by which it supplied natural gas to its patrons at Lebanon, was equipped, at and before the fire which destroyed appellee's property, with regulators to reduce automatically and control the pressure of gas, so that it could be safely used for domestic purposes in stoves and heaters; that such regulators were of the kind and so placed that if they had been in good working order and condition at and before the fire mentioned in the complaint, they would have automatically reduced and regulated the pressure, so that the gas could have been used with safety in stoves and heaters for domestic purposes; that such regulators had been in constant use by appellant in Lebanon for four years immediately preceding the fire; that said regulators were inspected within six days before the fire; that

when so inspected they were in good working condition and repair and suitable to perform the purpose for which they were designed; that said regulators were in good working order and condition and properly reducing and regulating the pressure of natural gas supplied to consumers in Lebanon as late as 9 o'clock of the evening of the 6th of November, 1894; that the fire which destroyed appellee's property occurred between 1 and 3 o'clock of the morning of November 7, 1894; that said regulators were in good working order and condition and properly reducing and controlling the pressure of gas in said city at 7 o'clock on the morning of November 7, 1894; that nothing had been done to the regulators after the fire and before 7 o'clock the next morning; that appellant did not know or have any reason to believe or suspect that at any time before the fire the regulators were out of repair or otherwise unsuitable or unfit to reduce automatically and control the pressure, so that the same could be safely used in stoves and heaters by any person using the same with ordinary care and suitable appliances. The following questions and answers we give in full: "(12) Were said regulators, or any of them, not in good and suitable repair, working order and condition at the time of the occurrence of said fire, if not, which of them was not in such condition, and in what respect? A. One heated stove indicated overpressure, but evidence does not show what regulator was out of order." "(14) Had the defendant company at any time before the occurrence of said fire employed any person to keep watch in either the night or daytime over the pressure at which the natural gas was being supplied to its consumers? A. Yes, in daytime but not at night."

The general verdict must stand against a motion for judgment on answers to interrogatories, unless such answers are absolutely irreconcilable with the general verdict. In determining the right of the moving party for judgment upon the interrogatories, we can not consider what evidence was introduced upon the trial, but simply what evidence

might have been properly offered under the issues. We must indulge every reasonable presumption in favor of the general verdict, and if upon any reasonable hypothesis the answers can be reconciled with the general verdict, the latter must stand. *Todd* v. *Badger,* 134 Ind. 204; *Goff* v. *Hankins,* 11 Ind. App. 456.

In determining whether the general verdict or the answers to interrogatories will control, we may look at the pleadings, for this is the only means of knowing what issues were involved, and also at the general verdict and the facts established by the answers.

Contending counsel do not agree in this case upon the theory of the paragraph of complaint upon which the verdict and judgment rest. By an instruction given by the court at the request of appellant it affirmatively appears that the trial was had upon the third paragraph of complaint. Our construction of the complaint is that it proceeds upon the theory that it was the duty of appellant to furnish natural gas to its patrons for domestic use from its low pressure mains at a low, safe, and uniform pressure of about twelve ounces to the square inch. That in order to do so, and to the end that the property and lives of its patrons might be protected, it was its duty to have a watchman to oversee and control the pressure, especially during the night; that appellant negligently failed to provide such watchman; that it negligently failed to furnish gas at the time complained of to appellee's tenant at a low, safe, and uniform pressure; that it negligently suffered an overpressure of gas in its low pressure main; that it negligently failed to detect or discover such overpressure; that it negligently failed to reduce such overpressure; that it negligently failed to notify its patrons of such overpressure, and that it negligently allowed and suffered such overpressure to continue and overheat the stove, etc. The complaint does aver that appellant suffered its regulators, machinery, and appliances for reducing the pressure of gas to get out of repair, etc., and for this reason

counsel contend that it brings the case within the rule laid
down in the case of *Terre Haute, etc., R. Co.* v. *McCorkle,*
140 Ind. 613, which holds that where a complaint is drawn
upon the theory that it is essential to allege two facts or
series of facts in order to recover, it is necessary to prove
such facts as alleged. And from this rule it is argued that
as the jury found that the regulators, etc., were not out of
repair, the facts specially found are in irreconcilable con-
flict with the general verdict. We can not concur in this
conclusion, for the reason that the appellee's complaint
would constitute a cause of action without the averment in
regard to the regulators, etc., being out of repair. This is
evident from the theory of the complaint as above stated, but
it will become more apparent from a further reference to
the complaint and a brief quotation from it. It is averred
that appellant procured its supply of gas from forty wells
about fifteen miles from Lebanon; and that said gas entered
the mains at a pressure of 250 pounds to the square inch;
that for the purpose of reducing the pressure so that the
gas could be used for domestic purposes, regulators, etc.,
were used; and that it was the duty of said defendant
constantly and diligently to oversee and watch, through and
by its servants, said wells, pipe lines, regulators, and appli-
ances for reducing said gas. The complaint then avers:
"That on the date of said fire and at the time of the destruc-
tion of said property of this plaintiff and the day prior
thereto the defendant, by its agents, servants, and employes,
did not constantly and diligently oversee and watch said
pipe lines, regulators, and appliances for reducing and regu-
lating said gas, but negligently, recklessly, carelessly, and
without regard for the property of this plaintiff and its
patrons and consumers, wholly failed and neglected to watch
and oversee the same, and negligently and carelessly left and
abandoned said regulators, machinery, and appliances to re-
duce, regulate, and control said gas, and the agent of such
company in charge of said plant, machinery, and appliances,

and business of said company, whose duty it was to oversee and watch the pressure of said gas so that the same might be regulated and controlled, became and was intoxicated, abandoned said business, and the office of said company, without leaving any one in charge of said plant and business." These averments show actionable negligence, and the averments that the regulators, etc., were out of repair was not essential to make the complaint good.

It has been ruled that a plaintiff may allege more facts than are essential to constitute a cause of action, but he need only prove the substance of so many of them as constitute the cause of action, and the remainder of them may be regarded as immaterial. *Terre Haute, etc., R. Co. v. McCorkle,* 140 Ind. 613. It is only necessary to prove more than one fact to support a cause of action where it requires two or more facts combined, as charged in the complaint, to constitute a cause of action.

In the recent case of *Indiana, etc., Gas Co.* v. *New Hampshire Ins. Co.,* 23 Ind. App. 298, this court held a complaint good which charged that the negligence complained of was that appellant was negligent in failing to provide a night watchman to control the supply of gas, which it had been accustomed to do and which it was necessary to do to prevent accidents.

In the case of *Holly* v. *Boston Gas Light Co.,* 8 Gray 123, 69 Am. Dec. 233, it was held that it was the duty of the gas company to institute and maintain an efficient system of oversight and superintendence and to be prepared with sufficient force ready to put in action and fully competent to supply and furnish a prompt remedy for accidents, defects, etc.

Appellant was engaged in dealing in and furnishing to its patrons a dangerous, deadly, explosive, and inflammable element. The character of the product it furnished required of it the highest degree of care and caution, and imposed

upon it a continuing duty of oversight and inspection. This duty, so far as the allegations of the complaint go, and we must take them as true for the purpose of deciding the motion under consideration, was wholly neglected by appellant. While it was its duty to maintain a continuous supervision of its regulators, etc., so as to control the pressure of gas and regulate it to a uniform pressure so far as human agency could, yet it left its machinery, appliances, and regulators without any supervision, and its servant, whose duty it was to oversee and watch the pressure so that the same might be regulated and controlled, became intoxicated and abandoned his station.

A person or corporation who furnishes natural gas to customers and negligently causes, suffers or permits the pressure to increase beyond the usual and accustomed pressure to the extent that it overheats stoves, etc., of its customers, and without the latter's fault, so that damage results to the customers, such act is a positive wrong, and is therefore actionable. In a case of this character it is not sufficient to relieve the gas company from liability for it to show that its regulators, etc., were in good repair and working order; but it must go further and show that it had maintained an efficient system of inspection; that it provided a watchman or competent servant to control the pressure, etc. *Koelsch* v. *Philadelphia Co.,* 152 Pa. St. 355, 34 Am. St. 653, 25 Atl. 522, 18 L. R. A. 759. Especially is it necessary for this to be done during the night, for it has become a matter of common knowledge that during the night, while many fires are either turned out or down, that receive their supply of fuel from the same main, the pressure is increased.

We have, in a measure, attempted to define some of the duties resting upon appellant, considering the nature and character of the business in which it is engaged, and in support of what we have said we cite the following authorities: *Holly* v. *Boston Gas Light Co.,* 8 Gray 123, 69 Am. Dec. 233; 14 Am. & Eng. Ency. of Law (2nd ed.) 936 & nn. 5, 7;

*Koelsch* v. *Philadelphia Co.,* 152 Pa. St. 355, 34 Am. St. 653, 18 L. R. A. 759; *Rockford, etc., Co.* v. *Ernst,* 68 Ill. App. 300; *Belvidere, etc., Co.* v. *Jackson,* 81 Ill. App. 424; *Barrickman* v. *Marion Oil Co.,* 45 W. Va. 634, 32 S. E. 327, 44 L. R. A. 92; *Alexandria, etc., Co.* v. *Painter,* 1 Ind. App. 587; *Indiana, etc., Gas Co.* v. *New Hampshire, etc., Ins. Co.,* 23 Ind. App. 298.

The jury by its general verdict found these enumerated acts of negligence against appellant, and, upon the theory of the complaint, we are unable to discover any inconsistency between the general verdict and the facts specially found. There was no error in overruling the appellant's motion for judgment.

The second question discussed under the motion for a new trial and argument of counsel is directed to alleged errors in the admission of evidence. The evidence of which appellant complains relates to the condition of other stoves in Lebanon heated by gas furnished by appellant on the night and at about the time appellee's house was burned. Appellee concedes the rule to be that, before such evidence is admissible, it must be shown that such other overheated stoves were on the same low pressure pipe lines, received their fuel from the same general supply under similar conditions, and through similar service-pipes; that the mixers and burners were substantially the same; that the keys regulating the fires were turned down as in the stove which burned appellee's house, and that there was no intervening regulator or hindrance to obstruct the free and uniform flow of gas in such lines. In other words, to make such evidence competent, it was first necessary to show that the general conditions of the other stoves were in all essential respects similar to the one that caused the injury. Such evidence, when the conditions are thus shown, is admissible for the reason expressed in the case of *Berrickman* v. *Marion Oil Co., supra,* in which it is said: "The condition and pressure of gas in the neighboring houses at the time of the fire, there

being no intervening regulator or hindrance to the force of the gas between the burned house and the other houses mentioned, would clearly indicate what it was at the house of the plaintiff, and I see no valid objection to the answering of the questions." See, also, *Indiana, etc., Gas Co. v. New Hampshire Ins. Co.,* 23 Ind. App. 298; *Washington Tp., etc., Co. v. McCormick,* 19 Ind. App. 663. Such evidence was admissible, the conditions being similar, to show or indicate what the pressure of the gas was at appellee's house on the night of the fire, which would tend to show that the conflagration was the result of the overheated stove, and the overheated stove was the result of an increased pressure of gas.

Counsel for appellee made an attempt to bring the offered evidence within the limits of the above rule, and it is for the court to determine whether or not this was done. A large number of witnesses were called to testify upon this point. We can not even give a summary of their evidence, but we can, in a general way, state the substance of it. The general scope of the evidence shows that on the evening preceding the fire those who testified turned down the fires in their respective stoves very low. Some of them testified that they turned them down just so they would not go out; and others so that the blaze only burned four or five inches high. It was shown that some of the stoves were supplied with service-pipes of the same size as the one in the appellee's house, while other service-pipes were smaller and others larger. All the evidence showed that the mixers were all furnished by the appellant. Some of the witnesses' stoves were supplied with gas from a different low pressure main from the one supplying gas to appellee's house, while others received their supply of gas from the same main. It is also shown that different stoves were unequal distances from the mains, being farther away from the mains than appellee's. The evidence does not show that there was any intervening regulators or hindrance to the force of the gas between the

burned house and the houses of the other witnesses, although the houses were on different streets. All the witnesses who testified as to overheated stoves in their houses testified that between 12 and 2 o'clock on the night appellee's house was burned they found their stoves greatly overheated. Some of the witnesses said their stoves were "red hot"; others, that they were at a "white heat"; others, that the stovepipes were red hot; others, that the rooms were so hot that they could not stay in them; others, that the pitch in the pine floors was drawn out by the heat; and one witness, who said that he turned down his fire at about 5 o'clock in the evening just low enough so it would not go out found it "red hot from top to bottom, and the room so hot" he "could hardly get in"; and another witness, who used a grate testified that he turned the fire down very low about 8 o'clock in the evening, and said: "The blaze was rolling out up and against the mantel. The room was very hot." The evidence further shows that some of these witnesses received their supply of gas from low pressure mains of different sizes than the one that supplied appellee's house; and also evidence tending to show that distance from high pressure mains, size and condition of the mixers, the size of the service-pipes, and the number of consumers would all cause the pressure to vary. The evidence, the substance of which we have given, establishes one fact beyond controversy, and that is, on the night that appellee's house was burned there was an unusual and high pressure of gas in appellant's low pressure mains in Lebanon, and that this high pressure caused the injury complained of.

We think that all the witnesses who testified as to the condition of other stoves, etc., on that night (except two whose evidence we will notice farther on), brought themselves within the rule laid down in the cases cited. We can not believe that the rule is so rigid as to require that the exact conditions must prevail. That is, we do not think that before it can be shown that other stoves were overheated

than the one causing the injury, where the supply of gas is received from the same general source, that such other stoves were supplied by the same sized service-pipes, the same kind of valves, and the same kind of mixers; that they were the same general distance from the mains, and that the keys were turned down in just the same way. Such a rule would be unreasonable, and the law does not require unreasonable things to be done. The rule only goes to the extent as to require similar conditions to be shown, and the cases of *Washington Tp., etc., Co.* v. *McCormick,* 19 Ind. App. 663, and *Indiana, etc., Gas Co.* v. *New Hampshire Ins. Co.,* 23 Ind. App. 298, should be so construed. It would be folly to say that two persons living in different houses could testify, or show to any degree of exactness, that they turned their keys just alike. But here it is shown that the service-pipes were of different sizes, leading to different stoves, and yet the gas was forced through these different sized pipes where the keys were turned low to such a high degree of pressure as to overheat the different stoves. The witnesses all received their gas from low pressure mains. It is not shown that the mixers were all alike, but it is shown that appellant furnished them, and we think all these facts make the evidence competent. Our conclusion is, from the reasons given and the authorities cited, that the evidence complained of was competent, and that the court did not err in admitting it.

Two witnesses were permitted to testify as to the high pressure of the gas used by them for illuminating purposes on the night appellee's property was destroyed. The gas so used by them was supplied from low pressure mains of appellant. It is shown that gas used for illuminating purposes is supplied through different burners than those used for heating purposes; that the pipes are smaller as a rule and that where used for illuminating no mixers are used. It thus appears that in such case conditions are dissimilar from those where gas is used for heating, although the supply is

from the same general source. Under these circumstances we are inclined to the opinion that the evidence was not admissible under the rule as herein declared, but we can not believe appellant was harmed by it. From the whole record we are led to the conclusion that a correct result was reached, and substantial justice done between the parties; and in such case it is not the policy of appellate tribunals to reverse a judgment for the admission of improper evidence, where the appellant is not harmed thereby. *Louisville, etc., R. Co.* v. *Miller,* 141 Ind. 533; *Hopkins* v. *Boyd,* 18 Ind. App. 63; *Snell* v. *Maddux,* 20 Ind. App. 169.

We do not find any error for which a reversal should be ordered. Judgment affirmed.