## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v*. BRODERICK.

[No. 7,986.   Filed October 15, 1913.   Rehearing denied April 9, 1914.]

1. APPEAL.—*Briefs.*—*Sufficiency.*—Under Rule 22 of the court, appellant's brief should be prepared so that each of the judges may comprehend therefrom the questions presented without recourse to the transcript, except in case of disagreement between the parties as to what the transcript contains; but a brief will be held sufficient, even though it does not fully comply with the rule, if a good faith effort at compliance is apparent.  p. 61.

2. RAILROADS.— *Crossing  Accidents.*— *Evidence.*— *Sufficiency.*— In an action for injuries to a boy run over by a train at or near a railroad crossing, where there was evidence to sustain each material allegation of the complaint and each material element of the cause of action, the question of its preponderance was for the jury in the first instance, and for the trial court on the motion for new trial, so that on appeal the verdict for plaintiff is conclusive on the evidence, regardless of the fact that the evidence supporting it is not entirely satisfactory.  p. 67.

3. RAILROADS. — *Crossing  Accidents.* — *Violation  of  Ordinance.* — *Speed.*—*Signals.*—The failure of a railroad company to comply with the provisions of a city ordinance regulating the speed of trains and requiring the ringing of the bell on a moving train, constitutes negligence *per se.*  p. 67.

4. RAILROADS.—*Crossing  Accidents.*—*Contributory  Negligence.*—In an action for injuries to a boy who was run over by a train at or near a railroad crossing, the defendant had the burden of proof on the issue of contributory negligence, and under evidence

Pittsburgh, etc., R. Co. *v.* Broderick—56 Ind. App. 58.

showing that the flagman was inattentive, and that the boy, who was of tender age, used some care to ascertain whether a train was approaching, and other evidence, which was conflicting, as to the speed of the train and as to whether any warning as to its approach was given, the question of whether the boy used a proper degree of care was for the jury.   p. 67.

5.  APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action against a railroad company for injuries received at or near a crossing, the refusal of an instruction that plaintiff must prove that the accident occurred at the crossing, if error, was harmless in view of the jury's answers to interrogatories showing that it did occur at the crossing.   p. 68.

6.  APPEAL.—*Review.—Harmless Error.—Instructions.*—Where the court refused an instruction that in determining the existence of contributory negligence the jury should consider all the evidence bearing on the question, whether introduced by plaintiff or defendant, the error was cured by another instruction that all the evidence should be considered and if it showed contributory negligence, it would be available to defendant.   p. 69.

7.  RAILROADS. — *Crossing Accidents. — Instructions.— Violation of Ordinance.*—In an action for injuries sustained at a railroad crossing, where the negligence charged consisted of failure to ring the bell and the running of the train at an excessive speed, all in violation of a city ordinance, an instruction permitting a recovery if defendant violated the ordinance in either respect was not erroneous on the ground that both acts of negligence constituted the plaintiff's cause of action, since the acts of omission and of commission charged were not dependent on each other, and negligence in either respect, if shown to be the proximate cause of the injury, would complete the cause of action.   p. 70.

8.  APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action for injuries to a boy by being run over by a train, where there was some dispute as to whether the accident occurred at a crossing or at a point on the track some distance therefrom, the concluding statement in an instruction submitting to the jury certain facts which, if found to be true, would entitle plaintiff to recover, that if the facts thus submitted were found to be true the finding should be for plaintiff "and that plaintiff's said son was injured on said crossing and injured as charged in the complaint," if erroneous, was harmless, since if the facts submitted were found to be true the accident must of necessity have occurred at the crossing, and it is not probable that the jury was misled.   p. 72.

9.  RAILROADS.—*Crossing Accidents. — Instructions. — Contributory Negligence.*—An instruction that plaintiff's son, who was run over by a train, was not guilty of contributory negligence if he

looked for trains while within a few feet of the crossing was erroneous in view of the evidence upon the question of his care in looking, which was of such character that it can not be determined therefrom as a matter of law that he was not guilty of contributory negligence. pp. 73, 74.

10. RAILROADS.— *Crossing Accidents.— Instructions.— "Thoughtful Care".—"Care and Caution".—"Few".—*The terms "thoughtful care" and "care and caution", as used in an instruction respecting care used by a person approaching a railroad crossing, are not legally definite, as there are all degrees of "thoughtful care" and "care and caution"; and the use of the word "few" in referring to the number of feet from the track where he looked for trains is an indefinite expression that includes a small or limited number. p. 73.

11. APPEAL.—*Review.—Consideration of Instructions.—*While it is the rule that an instruction, or some detached portion thereof, will not be held erroneous, if, upon consideration of all the instructions together it appears that the law was stated with substantial accuracy so that the jury could not have been misled, the rule applies only where the instructions under consideration are alike in being either general or specific; hence error in an instruction specific in character is not rendered harmless on the theory that the law was correctly stated in general instructions given. p. 75.

12. APPEAL.—*Review.—Objections to Evidence.—*No question is presented on an objection to the admission of evidence, where appellant's brief does not disclose the nature of the objection made. p. 76.

From Superior Court of Marion County (73,917); *Clarence E. Weir,* Judge.

Action by Daniel Broderick against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.

*George W. Galvin,* for appellee.

CALDWELL, J.—The record discloses that on May 9, 1907, appellee's minor son, John Broderick, then thirteen years old, had his left leg crushed by one of appellant's locomotives, or by a car drawn by said locomotive, at or near the Ray street crossing in the city of Indianapolis. This action was commenced by appellee, the father of the boy, against

appellant, in the superior court of Marion County, to recover compensation for loss of services, etc., based on the injury. The negligence charged against appellant, as disclosed by the complaint, was the violation of a certain ordinance of the city of Indianapolis, by running the locomotive within the city without ringing the bell attached thereto, and by operating the locomotive and train of cars within the limits of the city at a greater rate of speed than four miles per hour. The answer to the complaint was a general denial. There have been three trials of this cause in said court. At each of the first two trials, the jury disagreed. The third trial resulted in a verdict and judgment in favor of appellee, for the sum of $1,500, from which this appeal was taken. The error assigned is the overruling of the motion for a new trial. Under such assignment, appellant's brief presents for consideration the following questions: (1) The sufficiency of the evidence to sustain the verdict; (2) the alleged error of the court in refusing to give appellant's requested instructions Nos. 1 and 14, respectively, and (3) in giving of its own motion, instructions Nos. 12 and 14, respectively.

Appellee challenges the sufficiency of appellant's brief as measured by the requirements of Rule 22 of this court. The rule has been interpreted both by this court and

1. by the Supreme Court to mean that appellant's brief should be prepared so that each of the judges of the court in which the cause is pending on appeal, may comprehend the questions presented, from an inspection of the brief, with recourse to the transcript only in case of disagreement between appellant and appellee as to what is therein contained. It is only in a secondary sense that the rule is promulgated for the convenience of the court. Primarily, its purpose is that public interests may be served, by the expedition and dispatch of the business before the court. Appellant's brief, when measured by the rule strictly construed, while ably prepared, is technically insuf-

ficient in several particulars, but it is evident that there has been a good faith effort to comply with the rule, and under such circumstances, this court, as disclosed by former decisions, is disposed to hold the brief sufficient.

The record discloses that at the time when plaintiff's son received his injury, Ray street extended east and west through the city of Indianapolis, and that appellant's lines of railroad extended in a north and south direction through the city, intersecting Ray street at grade and practically at right angles. A short block east of the intersection, there was the common intersection of Ray street and Delaware street extending north and south, and Madison avenue, coming into the intersection from the northwest. Bachman's mill, a two-story structure, fronted on Madison avenue, and extended westward along the north property line of Ray street to very near appellant's tracks. Appellant's railroad at Ray street crossing consisted of three tracks, of which the east track was a stub track, extending northward from a bumper on the north side of Ray street near the southwest corner of the mill. The middle track was appellant's main line, and the west track was a running or passing track. The main track and the running or passing track both extended across Ray street, and thence to the south. Chestnut street extended north and south and intersected Ray street at the point of the intersection of the latter and the railroad track, but the evidence was not clear as to whether the tracks were within the limits of Chestnut street or immediately east of it. It was seven feet from the west rail of the east or stub track to the east rail of the main track, and twelve feet from the west rail of the main track to the east rail of the running track. The record does not disclose the exact distance between the east rail of the stub track and Bachman's mill, but there was evidence that the space between the mill and a box car which was standing on the south end of the stub track at that time, was about two feet. The main track was straight from Ray street

north to Madison avenue, a distance of about 600 feet, at which point it curved slightly to the west. The stub track ran parallel with the main track on the west, and with the west end of Bachman's mill on the east, to Madison avenue, and there joined the main track. South street was about 4,400 feet north of Ray street, and the south street yards were north of South street. There was evidence that the railroad approached the crossing from the north on a slightly rising grade. At the time of receiving his injury, appellee's son was thirteen years of age, of at least average activity, strength and intelligence, and his senses of sight and hearing were good. The foregoing facts shown by the evidence were undisputed.

Respecting the occurrence in which appellee's son received his injury, the boy's testimony was substantially as follows: In May, 1907, the boy was attending school, but sold and delivered newspapers evenings. On May 9, there was no school. At about three o'clock in the afternoon of that day, the boy, in company with his cousin, Patrick Lyons, who was about the same age as appellee's son, was walking westward along the north sidewalk of Ray street, from its intersection with Delaware street and Madison avenue, toward the Ray street crossing, his course being along the south side of Bachman's mill. His destination was some point west and north of the Ray street crossing, and his purpose to procure papers preparatory to the evening delivery. He had traveled the Ray street crossing many times and was familiar with the surroundings, and knew that appellant's lines of railroad crossed the street at that point. As he approached the crossing, he discovered a box car against the bumper at the south end of the stub track, the south end of the car being near the north line of the sidewalk. There was a space of about two feet between the car and the mill. The mill completely obstructed the view of appellant's tracks, until the boy reached its southwest corner, and was also an obstruction to the noise made by any train approach-

ing from the north. Patrick Lyons was slightly in advance of appellee's son. When appellee's son reached the corner of the mill, he stopped and looked carefully northward through the space between the box car and the mill, and also listened carefully in an effort to ascertain whether or not a train was approaching from the north. Neither seeing nor hearing an approaching train, he next looked southwestward across the tracks to where a crossing flagman was stationed, but the flagman, engaged in conversation with some other man, was standing with his back turned to the boy. Receiving no sign or recognition from the flagman, appellee's son, keeping his eyes turned towards the flagman, then walked from behind the car, and without looking up the track, passed on to the main track, whereupon his cousin, who was slightly in advance, as aforesaid, called out to him in warning, and at that instant the train struck him, and he was carried on the front part of the engine, south a distance of about sixty feet, where in some manner he was thrown under the engine, and it ran over him, and crushed his leg. It was the boy's habit, as he approached the crossing, to look northward between the mill and any standing car that might be there, and then towards the flagman, and if he saw no train, and the flagman gave him a signal, he remained standing or crossed the track, according to the nature of the signal. On that occasion, the flagman's back being turned, as aforesaid, and receiving no signal from the flagman, he passed immediately from behind the car upon the main track, without looking up the track as aforesaid. The boy did not see or hear the train until he reached the middle of the track, when the train was so close to him that he could not avoid it. He did not hear the engine bell ringing, and gave it as his judgment that the train was running fifteen to twenty miles an hour. He testified that he was in the habit of relying on the flagman to give him a signal if the train was approaching. Appellee's son was corroborated in the main by his cousin, Patrick Lyons. His

testimony was in part to the effect that he looked around the corner of the box car, but saw no train; that there were several coal cars farther north on the stub track, which obstructed the view to the north, and that the main track had a curve in it south of Madison avenue, but that the view of the main track was not obstructed for one square to the north; that when he reached the center of the main track, he saw the train about fifteen feet north of him, approaching at the rate of fifteen to twenty miles per hour, and that the engine bell was not ringing. The two boys were corroborated in their judgment as to the speed of the train and that the engine bell was not ringing, by one other witness.

One point in controversy was whether the train first came in contact with appellee's son at the crossing or at a point about sixty feet south of the crossing. As bearing on such controversy, Katherine Lyons, mother of Patrick Lyons, testified that soon after the boy was injured, she discovered and picked up at about the center of the crossing, a piece of cloth, afterwards identified as a piece of appellee's son's clothing, and that she saw blood and pieces of flesh at the point. She was not corroborated by any other witness, and admitted that she first informed others of her discovery after the trial of a cause at Danville in December, 1907, prosecuted in behalf of appellee's son to recover for his injuries. The foregoing is in substance a statement of that part of the evidence that tends to support the verdict, and that bears on the main event. There was further testimony in substance as follows: that the train that struck the boy consisted of a large sized yard engine and twelve or fifteen cars; that the engine was attached to the front end of the train and was headed south; that the train had started from the South street yards, and its destination was some point south of Ray street; there was no pilot on the front of the engine, but in the place of a pilot it had a footboard about twelve inches wide extending across its front end, about

twelve inches above the track. As the train proceeded south, to and over Ray street, the engineer, fireman and head brakeman were in the cab looking south. The conductor was standing on the footboard, and he was also looking south. The rear brakeman was sitting on the rear end of the rear car, facing north. No member of the train crew saw the boys as the train approached and passed over Ray street. The rear brakeman was the first of the crew to discover that the boy had been injured. He made this discovery after the rear of the train had passed some distance beyond Ray street, and he immediately signaled the train to stop. The members of the train crew testified that the engine bell was ringing, and they variously estimated the speed of the train at from four to six miles per hour. A number of witnesses, some of them not connected with the defendant company, testified that there was blood on and near the rail at a point about sixty feet south of the crossing, but that from that point to the north side of the crossing, there was no indication on the ground or track that any one had been injured. Beatrice Cabell, a young woman who lived at the southwest corner of the crossing testified that she saw the boys east of the crossing and on the north side of the street; that she saw them cross the railroad before the train arrived; that later she saw the train approach and cross over Ray street, and, quoting from her own testimony, she said further: "Well, they were going along the track, and I saw them catch on the train one time, and then let go, and then I saw Johnny catch another time, and he slipped and fell under the car, and his cousin ran to him, and he was crying, and then the train came back, and then the ambulance came, and took Johnny away." There was some evidence in the nature of impeaching evidence to the effect that two or three days after appellee's son received his injuries, his cousin, Patrick Lyons, signed a written statement and delivered it to appellant's claim agent, wherein he described the manner in which the injury was received, substantially as

testified to by Beatrice Cabell.   Considering the evi-
2.   dence as a whole, it is apparent from the foregoing
presentation that its support of the verdict is not
entirely satisfactory.   However, where there is some evi-
dence to sustain each material allegation of the complaint
and each material element of the cause of action, its prepon-
derance is first for the jury, and second for the trial court
in passing on the motion for a new trial, where, as in this
case, the sufficiency of the evidence is challenged by such a
motion.   As has been said, one question in controversy was
whether the boy received his injury south of the crossing,
in an attempt to cling to the moving train, or in an effort to
pass over the crossing as alleged in the complaint.   There
was evidence to sustain plaintiff's theory that the injury
was received at the crossing, and the jury, both by its gen-
eral verdict and by its answers to interrogatories returned
with the general verdict, found for appellee on this ques-
tion, and, under the rule that governs in this court, we can-
not disturb the finding.   We shall assume then, for pur-
poses of this discussion, that appellee's son received his
injury at the crossing.   On this assumption, the jury found
by the general verdict also that appellant was guilty of neg-
ligence as alleged.   If appellant in fact violated the
3.   terms of the ordinance, as averred in the complaint,
such violation constituted negligence *per se,* and there
being some evidence to sustain the verdict in this respect, we
cannot disturb it.

The next question that presents itself is whether appellee's
son, under all the circumstances shown in evidence, was
guilty of contributory negligence, as he approached
4.   and endeavored to pass over the crossing.   On this
issue, the burden of proof was on appellant.   The
rule that governs in such a case, where the facts are undis-
puted, is as follows:  "Where the facts and circumstances
surrounding a particular case are such as to warrant differ-
ent inferences, so that an impartial, sensible man may draw

the inference and conclusion that the injured person was guilty of contributory negligence, while another man, equally sensible and impartial, might draw a different conclusion, such question is one that, under appropriate instructions as to the law, should be submitted to the jury," *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308. Where, as here, some of the facts are disputed, the determining of such facts is a condition precedent to the application of the rule. Considering this question from the boy's own testimony on the trial of the cause, and as corroborated by his cousin, it is evident that he used some care. He made some effort at least by the use of his senses to ascertain whether the train was approaching. From the nature of the crossing, the conflict in the evidence respecting the speed of the train and as to whether any warning of its approach was given, the fact that the flagman was inattentive although a train was approaching, and a consideration of the tender age of the boy, we conclude that whether he exercised the requisite degree of care was properly a question for the jury.

It is urged that the court erred in refusing to give to the jury instruction No. 1 asked by appellant. This instruction is in substance to the effect that to entitle plaintiff to recover, he must have proven that his son received the injuries complained of by being struck on the Ray street crossing, as alleged in the complaint. Assuming that this instruction correctly states the law, as applicable to this case, its refusal did not harm appellant, for the reason that the jury found in answer to interrogatories Nos. 9 and 10 that the boy was struck by the engine on the Ray street crossing. The error, if any, in refusing the instruction was cured by the findings. *Chicago, etc., R. Co.* v. *Lynn* (1902), 30 Ind. App. 88, 65 N. E. 552; *Indianapolis St. R. Co.* v. *Brown* (1904), 32 Ind. App. 130, 69 N. E. 407; *Wilson* v. *Western Fruit Co.* (1894), 11 Ind. App. 89, 38 N. E. 827; *Goldsmith* v. *First Nat. Bank* (1912), 50

Ind. App. 11, 96 N. E. 503; *City of Muncie* v. *Hey* (1905), 164 Ind. 570, 74 N. E. 250; *Southern Ind. R. Co.* v. *Norman* (1905), 165 Ind. 126, 74 N. E. 896; *Terry* v. *Davenport* (1908), 170 Ind. 74, 83 N. E. 636.

The appellant contends that the court erred in refusing to give instruction No. 14, requested by appellant. This instruction is, in effect, that in determining whether appellee's son was guilty of contributory negligence, the jury should consider all the evidence bearing on that question, whether introduced by the apellant or by the appellee. The instruction is sound in law and applicable to the case, and unless covered by other instructions given, its refusal was error. By instruction No. 6, given by the court on its own motion, the jury was instructed that the burden was on appellant to show that appellee's son was guilty of contributory negligence. The instruction then proceeds as follows: "If, however, the evidence as a whole, either on the part of the plaintiff or on the part of the defendant, shows contributory negligence on the part of plaintiff's son, I instruct you that it would be available to the defendant to prove such fact." The Century Dictionary defines the word "available" as "having sufficient force or efficacy for the object; effectual." The court then in effect charged the jury that, although the burden was on the appellant to prove contributory negligence, yet, if the evidence as a whole showed contributory negligence, it was effectual to that end in appellant's behalf. Moreover, the court, by instruction No. 7, charged that "The jury are to take into consideration all the facts and circumstances shown in the case, and determine from all the evidence" bearing on the question whether appellee's son was guilty of contributory negligence. Appellant's instruction No. 14 was covered in substance by the court's instructions Nos. 6 and 7, and there was, therefore, no error in refusing appellant's instruction No. 14. *Fritzinger* v. *State, ex rel.* (1903), 31

Ind. App. 350; 67 N. E. 1006; *Indianapolis St. R. Co.* v. *Walton* (1902), 29 Ind. App. 368, 64 N. E. 630; *Ginn* v. *State* (1903), 161 Ind. 292, 60 N. E. 294.

Appellant contends that the court erred in giving instruction No. 14 in the series given by the court on its own motion, which is as follows: "If, therefore, you find from a preponderance of the evidence that at the time and place in question, plaintiff's said son John Broderick, was approaching the crossing of defendant's track and Ray street, and if you further find that plaintiff's said son before entering upon the crossing of said tracks used the care and caution which I have said is necessary to be used by a traveler, considering the age, knowledge and experience of said John Broderick, and if you further find that a locomotive engine of the defendant with a number of cars was at the time coming from the north upon said track, and if you further find that said engine approached and crossed said crossing at a speed greater than four miles an hour, or that there was at the time no bell ringing thereon as required by the ordinances of the city of Indianapolis, and if you further find that said failure of the defendant to comply with the provisions of said ordinances, or either of them, if there was such failure, was the direct and proximate cause of the injury resulting to the plaintiff's son, then I instruct you that your verdict should be for the plaintiff, and that plaintiff's said son was struck on said crossing and injured as charged in the complaint." It is argued by appellant that the complaint proceeds on the theory that both the excessive speed of the locomotive and the failure to ring the bell constituted the one single cause of action sued on, and that to have entitled appellee to recover on the issue of negligence, both the excessive speed and the failure to ring the bell must have been proven, and that, therefore, the court erred in giving the instruction, in that thereby the court instructed the jury that proof of either or both allegations of negligence entitled the plaintiff to recover on that issue.

The complaint avers the existence of an ordinance of the city of Indianapolis, §1 of which makes it the duty of persons operating a locomotive to ring the bell attached thereto whenever such locomotive is being moved in or through the city, and §2 of which declares it to be unlawful to run or operate a locomotive or train of cars within the city at a greater rate of speed than four miles per hour.   The charging part of the complaint is as follows: "And that in direct violation of provisions one and two of said ordinance, hereinbefore set out, said locomotive engine was propelled along and over its tracks and on and over said Ray street so carelessly and negligently as to cause the same to move at a speed of more than four miles per hour, and was so carelessly and negligently operated and run without ringing the bell thereon, and the same being so carelessly and negligently operated and run, was run upon and against this plaintiff's son," etc.   It is scarcely accurate to say that appellant's cause of action consisted of both the excessive speed and the failure to ring the bell.   The cause of action consisted of the injury resulting from appellant's negligence as the proximate cause thereof.   *Jeffersonville, etc., R. Co.* v. *Hendricks* (1872), 41 Ind. 48.   The negligent acts pleaded in a complaint might be of such a nature or might be so related to or dependent on each other as to require all of them to constitute negligence, or so that without the concurrence of all of them there would have been no injury. Such was the case in *Terre Haute, etc., R. Co.* v. *McCorkle* (1895), 140 Ind. 613, 40 N. E. 62; and *Southern R. Co.* v. *Jones* (1904), 33 Ind. App. 333, 71 N. E. 275, cited in appellant's brief.   In the case at bar, the negligent act and the negligent omission charged are not dependent on each other, either as matter of fact or as alleged in the complaint.   If appellant were negligent in speed, as alleged, but did not negligently fail to ring the locomotive bell, and such negligence in speed resulted in and was the proximate cause of the injury, the cause of action was complete.   The same may

be said of the negligent failure to ring the locomotive bell. In so far as concerns the objection to the instruction now under discussion, there was no error in giving it. *Indiana, etc., Gas. Co.* v. *Long* (1901), 27 Ind. App. 219, 59 N. E. 410; *Gould Steel Co.* v. *Richards* (1903), 30 Ind. App. 348, 66 N. E. 68; *Louisville, etc., Traction Co.* v. *Short* (1908), 41 Ind. App. 570, 83 N. E. 265; *Terre Haute, etc., R. Co.* v. *Lauer* (1899), 21 Ind. App. 466, 52 N. E. 703; *Standard Oil Co.* v. *Bowker* (1895), 141 Ind. 12, 40 N. E. 128.

It is next urged that the giving of the concluding clause of the instruction as a part of it was error. The concluding clause is as follows: "and that plaintiff's said son was struck on said crossing and injured as charged in the complaint." Appellant's criticism of the clause as a part of the instruction is that apparently the court thereby instructed the jury that if it found the facts outlined in the instruction to be true, then they should find that the boy was struck on the crossing. Literally construed, appellant's construction of the instruction is correct. However, assuming that the boy was injured by the train coming in contact with him, and that fact was not controverted, it would seem that if the facts submitted by this instruction were found to be true, the boy must of necessity have been injured on the crossing. But if such conclusion is not legitimate, still we do not believe that the giving of the clause as a part of the instruction was substantial error. As has been heretofore indicated, one question in controversy was whether the boy was injured south of the crossing while attempting to grab and cling to the train or by the train coming in contact with him while he was attempting to pass over the crossing. If he was not injured in the first manner, then he was injured in the second manner. If injured in the first manner, the court, by an instruction given at the request of appellant, excluded the right to recover, thus leaving for the consideration of the jury the right to recover if the boy was injured at the crossing. Now

by this instruction, the court is not submitting to the jury the question of in which of said manners the boy received his injury, but is submitting for the consideration of the jury certain facts which, if found to be true, would entitle plaintiff to recover. These facts are on the assumption that the boy was injured in the second manner, but whether he was injured in said manner is, by the instructions as a whole, left to the jury. We do not believe that the jury could have understood from the instruction that if it found the facts outlined in the instruction to be true, it should find that the boy was injured at the crossing, as opposed to the theory that he received the injuries south of the crossing while making an effort to cling to the train. While the quoted clause does not add anything to the instruction in the connection in which it is used, and while it is apparent that the clause, if given as a part of the instruction, should have been included among the facts submitted, still we do not believe that the jury was misled by it, and we, therefore, hold that in the respect under consideration, there was no prejudicial error in giving the instruction.

Appellant insists that the court erred in giving instruction No. 12 in the series given by the court on its own motion. This instruction is as follows: "If you find from a preponderance of the evidence in the case that the plaintiff's son, John Broderick, on the occasion in question, with thoughtful care of the presence of the railroad tracks, stopped, looked and listened within a few feet of the track of defendant and exercised care and caution to ascertain if there was an approaching train on the track in either direction, and that he did not know of the approaching train in time to have avoided injury, and that after so exercising care and caution, he ran across said track without having heard or seen the approaching locomotive engine, then I instruct you that plaintiff's son would not be chargeable with contributory negligence." This instruction presents for consideration the issue of con-

tributory negligence. It is given on the theory that the boy was injured at the crossing, and on that theory such issue was important. The expressions "thoughtful care" and "care and caution" are not legally definite. There may be all degrees of "thoughtful care" and "care and caution." However, by general instructions the court fully advised the jury as to the degree of care that would be required in order that the boy should not be held guilty of contributory negligence. The instruction specifies as a place from which observations should be made as "within a few feet of the track." By general instructions, the court charged the jury respecting the duty to use reasonable care in selecting a place from which to look and listen. Construing such general instructions with this specific one, it is as if the court had said that one approaching a railroad crossing must exercise reasonable care in selecting a place from which to look and listen for the approach of a train, but that if he selects a place within a few feet of the track, he will be in the exercise of reasonable care in so far as concerns selecting a place from which to make such observations. "Few" is an indefinite expression for a small or limited number. Bouvier's Law Dictionary. For interpretations of the word in various relations, see the following: *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 414, 61 N. E. 936; *Butts* v. *Town of Stowe* (1880), 53 Vt. 600; *Allen* v. *Kirwan* (1894), 159 Pa. St. 612, 28 Atl. 495. It is at least a doubtful question whether the boy looked up the track after he looked through the space between the car and the mill. The point at which he stood at that time, is, within the meaning of the indefinite expression, "a few feet from the track." The instruction then is open to the construction, as applied to the facts of this case, that if the boy stopped and listened and looked through the space, and thereupon ran on to the track, without making any further effort to ascertain the approach of a train, it should be held as a matter of law that he was not guilty of

contributory negligence. Considering distances and measurements as shown by the evidence, and the narrowness of the space between the mill and the stub track, as testified to by the boy, and the fact that such space extended parallel with the main track, the point at which the boy's line of vision intersected the main track can be geometrically demonstrated to have been several hundred feet up the main track; so far indeed that if the boy passed immediately on to the track, the train must have been south of such point, and within plain view, even if we assume that it was running twenty miles per hour, the greatest rate of speed estimated by any witness. Conceding, for the purposes of this discussion, that the facts outlined in this instruction made a proper case to be submitted to the jury on the question of contributory negligence, and that it would have been proper for the court to instruct the jury that it should consider the facts among others shown by the evidence, in determining the issue of contributory negligence, it still could not be said that, as a matter of law, under such facts, the boy was not guilty of contributory negligence.

We are not unmindful of the rule that all the instructions must be construed together, and that if "upon considering all the instructions together it fairly appears that the law was stated with substantial accuracy, so that the jury could not have been misled, no ground for reversal is presented, even though a particular instruction, or some detached portion thereof, may not be precisely accurate." *Cooper* v. *State* (1889), 120 Ind. 377, 22 N. E. 320. However, we cannot say that the jury was not misled by the instruction under consideration. Moreover, the rule applies only where the instructions under consideration are alike in being general or specific, as the case may be. It is a rule of uniform application that when a general statement is followed by a specific statement respecting the same subject-matter, the former is limited by the latter. 36 Cyc. 1119. It, therefore, follows that correct general instructions given

cannot cure the error committed in giving an erroneous specific instruction on the same subject-matter, for the very evident reason that such a specific instruction not only limits, but also erroneously applies the principle announced in such general instructions. *Clark* v. *State* (1902), 159 Ind. 60, 64 N. E. 589; *Trogdon* v. *State* (1892), 133 Ind. 1, 32 N. E. 725. We hold that the giving of the instruction, especially in view of the state of the evidence, constituted error. See, also, *City of Lafayette* v. *Ashby* (1893), 8 Ind. App. 214, 231, 34 N. E. 238, 35 N. E. 516.

Appellant complains that the court permitted the appellee's son, John Broderick, when testifying as a witness, to answer, over objection, a question respecting his 12. habit of relying on the flagman at the crossing, to give him notice of danger. We are not informed by appellant's brief as to the nature of the objection made to this question, and only incidentally that any objection at all was made. Under such circumstances we are not required to determine whether the permitting of the question to be answered constituted error.

For error in giving instruction No. 12, the judgment is reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 102 N. E. 887. As to a railroad's duty to public in respect of warnings at crossings, see 17 Am. Rep. 363; 37 Am. Rep. 443; 100 Am. Dec. 412. On the question of failure to give signal as affecting liability for injury to small children on railroad track, see 25 L. R. A. 788. As to the contributory negligence of children, see 1 Ann. Cas. 895; 17 Ann. Cas. 353; Ann. Cas. 1913 B. 969. See, also, under (1) 2 Cyc. Anno. 1013; (2) 3 Cyc. 348, 354; (3) 33 Cyc. 968, 976; (4) 33 Cyc. 1070, 1114; (5) 38 Cyc. 1817; (6) 38 Cyc. 1781; (7) 33 Cyc. 1134; (8) 38 Cyc. 1809; (9) 33 Cyc. 1138; (10) 38 Cyc. 1595; (11) 38 Cyc. 1782; (12) 2 Cyc. 1016.