## TERRY *v.* DAVENPORT ET AL.

[No. 20,997. Filed February 6, 1908.]

1. TRIAL.—*Instructions.*—*Requests . for.*—*Adoption of.*—*Statutes.*— The trial judge may adopt the unsigned, requested instructions of a party as his own, though §544a Burns 1905, Acts 1903, p. 338, §1, directs that such requested instructions shall be signed by the party or his counsel, such statute being remedial and directory. p. 75.

2. SAME.—*Instructions.*—*Requested.*—*Failure of Party to Sign.*— The party failing, personally, or by counsel, to subscribe requested instructions, can raise no question thereon, where the judge refuses to give same. p. 76.

3. APPEAL.—*Reserved Question of Law.*—*Instructions.*—*Evidence.*— Where an appeal is taken upon reserved questions of law affecting the instructions, there being no certificate of the judge showing the character of the evidence, and the evidence not being in the record, the instructions will be sustained if they were correct under any supposable evidence admissible within the issues. p. 76.

4. TRIAL.—*Instructions.*—*Repetition of.*—*Wills.*—The repetition of instructions, in word or substance, emphasizing the right of a testator, of sound mind, to make his own will, is usually considered harmless. p. 76.

5. SAME.—*Instructions.*—*Wills.*—*Testamentary Capacity.*—An instruction, in a will contest, that if testator, at the time of the preparation of his will, was of sound mind, and he afterwards became stricken with disease, and later executed the will so prepared, having sufficient capacity to understand that he was signing such will, the will was not invalid on the ground of unsoundness of mind, is erroneous. p. 78.

6. SAME.—*Erroneous Instructions.*—*Curing by Interrogatories.*— *Wills.*—*Testamentary Capacity.*—In a will contest, an erroneous instruction on the question of testamentary capacity is cured by answers to interrogatories showing that the testator was of sound mind at the time of the execution of such will. p. 79.

7. WILLS.—*Sanity of Testator.*—*Presumptions.*—Testators are presumed sane. p. 80.

8. APPEAL.—*Harmless Error.*—A harmless error does not justify a reversal. p. 81.

From Pulaski Circuit Court; *John C. Nye*, Judge.

Will contest by Mary Terry against John A. Davenport and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Henry A. Steis, M. M. Bruce, Burson & Burson* and *McConnell & Jenkines,* for appellant.

*M. Winfield* and *M. M. Hathaway,* for appellees.

HADLEY, J.—Albert Davenport died testate, leaving as his next of kin the children of a deceased brother and the daughter of a deceased sister. He bequeathed to his niece, the daughter of his deceased sister, $10, and the balance of his estate, alleged to be $50,000 in value, to his nephews and niece, the children of his deceased brother. The appellant, Mary Terry, the recipient of the $10 legacy, instituted this suit to contest the validity of her uncle's will on the grounds (1). of undue execution, and (2) want of testamentary capacity.

The overruling of her motion for a new trial is the only error assigned.

The view we have taken of the case on the merits persuades us to pass by some questions raised by appellees involving the regularity and sufficiency of the appeal.

The instructions given by the court upon request of appellees were not signed by the parties or their attorneys, as provided by the act of 1903 (Acts 1903, p. 338, §1, §544a Burns 1905), which reads: "That all instructions requested shall be plainly written and numbered consecutively, and signed by the party, or his counsel." It is. argued on behalf of appellant that the statute is mandatory, and that the court, being expressly without authority of law to submit unsigned requests to the jury, the doing so constituted reversible error against the party prejudiced thereby. We do not think the statute is mandatory. It is but a rule of procedure, and manifestly designed to promote the orderly and accurate dispatch of business by requiring such identification of various propositions presented as will enable the court to avoid confusion and mistake.

The court assumes the responsibility of error for any instruction he submits to the jury, whether signed or unsigned,

and we see no reason why he may not adopt the proposition even of a stranger, signed or unsigned, and submit it to the jury as his own. The law does not stop to inquire who prepared the instructions. It is content if the charge contains a correct exposition of legal principles applicable to the facts involved in the case.

This provision of the statute, however, is not a dead letter, but a party may take advantage of it only when his opponent's requests have been refused. The trial judge 2. may, without error, refuse to submit unsigned proposals, even though they contain full and accurate expressions of the law, and in cases of refusal of correct instructions, when questioned by the party requesting them, the opposite party may invoke the nonsigning in defense of the action of the court. *Beatty* v. *Brummett* (1884), 94 Ind. 76, 83; *Choen* v. *Porter* (1879), 66 Ind. 194, 201. The instructions in question were not only given, but they, and the exceptions thereto, are authenticated as the statute requires, and are therefore before us for consideration.

Were any or all of them erroneous? The appeal is upon reserved questions of law, by a special bill of exceptions under §§669, 691 Burns 1908, §§630, 650 R. S. 1881, 3. and involves only the soundness of the instructions requested by appellees, taken severally and as a body. The evidence is not in the record; neither is there any certificate of the judge showing the character of the evidence given. We must, therefore, be directed by the rule laid down in *Rapp* v. *Kester* (1890), 125 Ind. 79, and reaffirmed in *Chestnut* v. *Southern Ind. R. Co.* (1901), 157 Ind. 509. See, also, *Mankin* v. *Pennsylvania Co.* (1903), 160 Ind. 447; *Jones* v. *Foley* (1889), 121 Ind. 180, 182.

The first assault is made against the instructions as a whole, the particular complaint being that they embodied such a frequent repetition of certain facts as tended 4. unduly to impress the jury with the importance of such facts. In other words, that the instructions were

palpably unfair, because calculated to mislead the jury from a consideration of the whole evidence by so frequently calling their attention to the following language: "The long-continued purpose of the testator, as shown by the evidence, to make the will in the terms in which he did make it," "if the testator was found to be of sound mind when he executed the will it was his absolute right to make the will as he pleased, and to give his property to certain of his nephews and nieces, to the exclusion of the plaintiff," and "you will be violating your duty, as jurors, if, by your verdict, you should take away from him that right." Statements and admonitions, in substance the same as those just quoted, were repeated six or seven times in the course of the sixteen instructions given.

It is not pretended that any of the language used in any of the instructions was, of itself, erroneous or improper, but the insistence is that the frequent recurrence to the same facts was inclined to impress the jury with the belief that the court regarded such facts as controlling. Courts, in civil cases, at least, generally look upon the repetition of a correct proposition of law as harmless. The purpose of instructions is to guide the jury in the application of right principles to the facts of the case, and in such principles the jury cannot be too firmly grounded. *Coffman* v. *Reeves* (1878), 62 Ind. 334, 343; *Murray* v. *New York, etc., R. Co.* (1883), 103 Pa. St. 37, 43; *Gran* v. *Houston* (1895), 45 Neb. 813, 64 N. W. 245; 1 Blashfield, Instructions to Juries, §169.

In the case of *Murray* v. *New York, etc., R. Co., supra,* it was said: "This instruction was not too strong, and, as it was good law, its repetition to the jury could have done no harm. * * * I do not think seventy times seven would have been too often." We do not, however, hold that even a correct proposition may in all cases be repeated without limit. All we decide is that the facts of the case warranted the presiding judge in the exercise of care in cau-

tioning the jury to avoid the well-known tendency of such bodies to become unduly influenced in their verdict by what appears to them to be an inequitable distribution of property; and that the repetitions complained of are not therefore erroneous.

It is also affirmed by appellant that the thirteenth instruction was both erroneous and in such obvious conflict with other instructions given, in which testamentary capacity was properly defined, as to be confusing and misleading.

The court, in instructions two, three, five and six, and perhaps others, correctly advised the jury as to what constituted testamentary capacity, as defined in *Teegarden* v. *Lewis* (1896), 145 Ind. 98, and *Wait* v. *Westfall* (1904), 161 Ind. 648, 662, and in interrogatory thirteen directed as follows: "If Albert Davenport, at the time he had his will prepared, was of sound mind, but afterward, and before the will was signed, he was stricken with disease, then I charge you, if he had mind enough at the time the will was signed and witnessed to know the business in which he was engaged, and that he was signing the will he had already prepared, then, I charge you, the will is not invalid on the ground of unsoundness of mind." We agree with appellant that this instruction was too narrow. It was not enough to know he was executing a will he had previously dictated. He should also have been able to recollect and approve the provisions he had made in the distribution of his property. The limits of this charge may exclude the possibility of establishing a change of mind after dictating the terms of a will. The door should not be shut against such proof. As in this case it was shown that, after his will had been prepared by Hathaway, the testator left the office to procure witnesses to the will, but for some unknown reason instead of returning with the witnesses he went home without executing the will. Was he still undecided?

But the error is harmless in this case. The facts relating

to the execution of the will were specially found in answers to interrogatories, the substance of which is that on account of ill feeling existing between the plaintiff and the testator the latter had a fixed purpose, of long standing, to refuse the former a substantial share of his property. Eighteen years before his death he made a will carrying out that purpose by bequeathing to his wife all his property during her life and at her death the same was to go to the children of a deceased brother, except the sum of $10, which was to be divided equally between the plaintiff and her mother. His purpose thus to dispose of his property was often declared through all the years of his life, subsequent to 1888. The testator's wife and the plaintiff's mother having died, to meet the changed conditions, about three weeks before his death, the testator called upon his attorney, Mr. Hathaway, and employed him to make another will to take the place of the one made in 1888, bequeathing to the children of his brother all his property except $10, which latter sum he wished to bequeath to the plaintiff. The will was prepared as directed, read over to the testator, and by him pronounced ''just as he wanted it.'' After approving the draft of the will he left the office to procure witnesses, but did not return. He went home and two weeks afterward became sick, and on the same day, to wit, February 3, he instructed his housekeeper that if anything happened to him to send for Mr. Hathaway, that he might sign the will the latter had recently prepared under his direction. When asked on the next day if he desired Mr. Hathaway sent for, he answered in the affirmative, and also directed that Mr. Hathaway be requested to bring the necessary witnesses with him. Mr. Hathaway procured the witnesses as requested, and with them called at the residence of the deceased in the afternoon of the same day. Hathaway again read the will to the deceased and the latter then remarked: ''That is all right,'' and when it was read he had mind enough to realize that it was the instrument

that he had directed written two weeks before, that it was unsigned, and to make it valid as a will it must be signed, acknowledged and witnessed. He also knew at the time he signed and acknowledged the will that the legatees mentioned therein, to wit, the plaintiff and the children of his brother, were his sole heirs at law, and that he was giving the bulk of his property to his brother's children, and was practically disinheriting the plaintiff. But the will as prepared by Hathaway and executed on February 4, accurately expressed the long-cherished purpose of the testator in the disposition of his property. It was also found as a fact that when the testator executed the will of 1888, and directed the preparation of the will, in suit, and at all intermediate times, he was of sound mind.

There was no evidence offered to sustain the issue of undue execution. The presumption is that the testator was of sound mind. The general verdict found he was of sound mind, and there is not in the special findings a single fact inconsistent with sanity at the time he signed and acknowledged the will in suit. It was read to him in the room in which he lay sick, he recognized it as the will which he, two weeks before, had directed to be written, he knew the legatees therein mentioned were his only heirs at law, and understood that by the terms of the will the plaintiff would get but $10 of his estate and that the balance would go to the children of his brother. There is not disclosed by the record a single fact or circumstance that tends to impeach the sanity of the testator, except that he was sick when he signed the will, and died about one week later. The answers to the thirty-eight interrogatories are, throughout, consistent with the general finding that the testator was of sound mind when he executed the will. Testamentary capacity being the ultimate fact, and the only issue, could not have been determined differently if the thirteenth instruction had been in correct terms. It is man-

ifest, therefore, that appellant was not injured by the
8. intermediate error in giving the instruction com-
plained of.   *Putt* v. *Putt* (1897), 149 Ind. 30.   A
harmless error does not justify a reversal.

Judgment affirmed.