## PENCE ET AL. *v.* MYERS ET AL.

[No. 22,241.. Filed May 7, 1913.    Rehearing denied October 15.
1913.]

1. **WILLS.**—*Contest.—Burden of Proof.*—In a proceeding to con-
test a will which has been admitted to probate, the burden of
proof is on the plaintiff. p. 283.

2. **WILLS.** — *Contest.* — *Insanity.* — *Evidence.* — *Conclusiveness of
Verdict.*—A verdict that a testator was of unsound mind at
the time of making his will, on evidence indicative of an eccen-
tric and peculiar state of mind, is conclusive, although, when
such evidence is considered with evidence as to testator's physi-
cal ailments, there may be serious question as to whether his
eccentricities and peculiarities were the result wholly of mental
weakness or, partially at least, of physical disabilities. p. 284.

3. **WILLS.**—*Contest.—Mental Incapacity.—Proof.*—In a proceed-
ing to contest a will on the ground of unsoundness of mind,
plaintiffs must not only prove that testator was of unsound
mind but that his testamentary capacity was thereby affected.
p. 284.

4. **WILLS.**—*Testamentary Capacity.—Test.*—The test of testa-
mentary capacity is, Considering all perversion, peculiarities and
hallucinations of the mind of the testator, does he yet have an
untrammeled intellect sufficiently strong and rational to know
the extent and value of his property, the number and names of
those who are the natural objects of his bounty, their deserts
with reference to their conduct toward and treatment of him,
and to remember these things long enough to have his will pre-
pared and executed? p. 284.

5. **APPEAL.**— *Review.— Conflicting Evidence.— Verdict.*— A verdict
on conflicting evidence will not be disturbed on appeal. p. 285.

6. **EVIDENCE.**—*Cause of Death.—Admissibility of Health Officer's
Record.*—The record of the county health officer, prepared from
the physician's death certificate, being hearsay evidence as to
facts or statements of a privileged character, is not admissible
in a suit to contest the will of a decedent, where the death
had already been established without controversy, and the evi-
dent purpose was to present to the jury by such record the
statement of the attending physician as to the cause of such
death. p. 286.

7. **WILLS.** — *Contest.* — *Evidence.* — *Testimony of Attending Physi-
cian.*—In proceedings to contest a will, the testator's attend-
ing physician should not be permitted to give testimony tend-

ing to strike down the will, as to the condition of testator's mind, or as to the disease from which he suffered, the cause or duration of his illness and the cause of his death, unless the objection thereto is waived by him who stands in the place of the decedent. p. 286.

From Grant Superior Court; *Robert M. VanAtta,* Judge.

Action by Sarah Survilla Myers and others against Mary Elizabeth Pence and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Condo & Browne* and *W. S. Marshall,* for appellants.

*A. E. Steele, S. L. Stricler, R. A. Heavilin, Louis B. Ewbank, John W. Hanan* and *J. Frank Hanan,* for appellees.

SPENCER, J.—Appellees brought this action against appellants to set aside the probate of and to contest the last will and testament of their father, Solomon Pence, deceased. A trial by jury resulted in a verdict for appellees. Appellants' separate and several motions for a new trial were overruled and this appeal taken.

It is first insisted that the verdict of the jury is not supported by sufficient evidence and is contrary to law. In a proceeding to contest a will which has been admitted to probate, the burden of proof is on the plaintiff. *Steinkuehler* v. *Wempner* (1907), 169 Ind. 154, 81 N. E. 482, 15 L. R. A. (N. S.) 673; *Blough* v. *Parry* (1896), 144 Ind. 463, 491, 40 N. E. 70, 43 N. E. 560; *Turner* v. *Cook* (1871), 36 Ind. 129, 138.

Appellees introduced evidence tending to show that both before and after the execution of his will, the testator was at times forgetful; that he sometimes failed to recognize persons whom he knew; that he talked very little and then with difficulty; that he got lost in his own woods, and was in a feeble condition physically. Some of the witnesses testified that they had seen him pick stones out of the road and out of holes into which they had been thrown; that on such occasions he sometimes failed to heed the approach of automobiles and other vehicles; that he had hallucinations as

to the number of trees he had set out and the number of houses he had built in his lifetime; that although possessed of considerable property, he sometimes spoke of having nothing; that he dug a useless trench in his garden which had to be filled up; that he wandered away from home and had to be brought back; that he, on one occasion, got up in the middle of the night and pumped water; that he wore a hat away from a store without buying it; and that he was once seen on his hands and knees barking like a dog at some hogs in the woods.

These and similar incidents in the later years of the testator's life were undoubtedly indicative of an eccentric and peculiar state of mind but when considered with the

2. fact that he was afflicted with rheumatism for many years prior to his death and suffered intense pain therefrom, and that during the fall and spring preceding the making of his will he was seriously ill with la grippe so that his speech was affected and was at times delirious, there is serious question as to whether his peculiarities were the result wholly of mental weakness or, partially at least, of physical disabilities. The verdict of the jury, however, settles all disputed issues of fact and is "that Solomon Pence was, on the 15th day of June, 1908, (the date of the execution of the will) a person of unsound mind."

It is necessary, however, that appellees should go further and prove that testator's mental unsoundness affected his testamentary capacity. To determine such capacity

3. the test is, Considering all perversion, peculiarities and hallucinations of the mind, does there yet remain

4. in the subject an untrammeled intellect sufficiently strong and rational to know the extent and value of his property, the number and names of those who are the natural objects of his bounty, their deserts with reference to their conduct toward and treatment of him, and memory sufficient to carry these things in mind long enough to have his will prepared and executed? For decisions supporting

this rule, in some of which the testator's infirmities were even more marked than in this case, see: *Hoffbauer* v. *Morgan* (1909), 172 Ind. 273, 277, 88 N. E. 337; *Young* v. *Miller* (1896), 145 Ind. 652, 44 N. E. 757; *Durham* v. *Smith* (1889), 120 Ind. 463, 22 N. E. 333; *Geiger* v. *Bardwell* (1912), 255 Ill. 320, 99 N. E. 582; *Kingsbury* v. *Whitaker* (1880), 32 La. Ann. 1055, 36 Am. Rep. 278; *Gesell* v. *Baugher* (1905), 100 Md. 677, 60 Atl. 481; *Merrill* v. *Rush* (1881), 33 N. J. Eq. 537; *In re Jones' Will* (1893), 25 N. Y. Supp. 109, 5 Misc. 199; *In re Vedder* (1888), 6 Demarest (N. Y.) 92, 14 N. Y. St. Rep. 470; *Shreiner* v. *Shreiner* (1896), 178 Pa. St. 57, 35 Atl. 974.

The testimony of several witnesses in the case at bar indicates that the provisions of this will are in substantial accord with the testator's intentions as expressed on occasions other than at the time of the execution of the instrument, at least one of these occasions being about a year prior thereto; that each of the appellees married without their father's knowledge; that appellee Sarah Myers moved to Nebraska immediately after her marriage and did not visit her father in over twenty-five years until she came to Indiana in the spring of 1908 to join her sister, appellee Mary Drook, in a suit to have their father declared of unsound mind and to have a guardian appointed for him, which suit was dismissed on the second day of the trial; that the testator expressed great regret that the suit was brought and yet a few months later remembered appellees in his will with bequests to each in the sum of $500; that he advanced certain sums of money to them in his lifetime and made two trips to Nebraska to visit appellee Sarah Myers.

The jury, however, has found that at the time of making his will the testator did not possess certain faculties necessary to establish testamentary capacity, and, on an 5. examination of the record, we can not say that there is absolutely no evidence to support such conclusion. It is a familiar and well-settled rule that a verdict on con-

flicting evidence will not be disturbed on appeal when there is competent evidence to support it. *Rice* v. *Manford* (1886), 110 Ind. 596, 11 N. E. 283; *Gheens* v. *Golden* (1883), 90 Ind. 427; *Medler* v. *State, ex rel.* (1866), 26 Ind. 171.

Appellees offered in evidence a record kept by the health officer of Grant County. This record was prepared from the physician's death certificate, and, in addition to certain personal statistics relative to the deceased, contained the date and cause of his death. Its object was stated to be evidence "as to the death of Solomon Pence" but the death of the testator had already been established without controversy and the evident purpose of this record was to present to the jury the statement of the attending physician as to the cause of such death. The admission of this record was error. It is well established that in a will contest, a physician, attendant on a testator, at the time of his death, should not be permitted to give testimony tending to strike down the will as to the condition of the testator's mind or as to the disease from which he suffered, the cause or duration of his illness and the cause of his death, unless the objection thereto is waived by him who stands in place of decedent. Subd. 4, §520 Burns 1908, §497 R. S. 1881; *Heaston* v. *Krieg* (1906), 167 Ind. 101, 117, 77 N. E. 805, 119 Am. St. 475; *Towles* v. *McCurdy* (1904), 163 Ind. 12, 71 N. E. 129. In the absence of a statutory provision therefor, it is equally true that the death certificate of such physician or a health record alleged to be based thereon and showing the above facts or any of them is incompetent in such a case, being hearsay testimony as to facts or statements not directly admissible because of their privileged character. *Modern Woodmen, etc.* v. *Miles* (1912), 178 Ind. 105, 97 N. E. 1009; *Naanes* v. *State* (1896), 143 Ind. 299, 305, 42 N. E. 609; *Brotherhood, etc.* v. *Barton* (1910), 46 Ind. App. 160, 167, 92 N. E. 64; *Sovereign Camp, etc.* v. *Grandon* (1902), 64 Neb. 39, 48, 89 N. W. 448; *Beg-*

*lin* v. *Metropolitan Life Ins. Co.* (1903), 173 N. Y. 374, 66 N. E. 102; *Kelley* v. *Moore* (1903), 22 App. Cas. (D. C.) 9, 27.

Some other questions are presented as to certain instructions given and refused, but as they may not arise on another trial of the case we do not deem it necessary to a determination of this cause to discuss them. For error in the admission in evidence of the Grant County health record the judgment is reversed, with instructions to the trial court to sustain appellants' motions for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 101 N. E. 716. See, also, under (1) 40 Cyc. 1283; (2) 40 Cyc. 1341, 1358; (3) 40 Cyc. 1023; (4) 40 Cyc. 1004; (5) 3 Cyc. 348; (6) 40 Cyc. 2387, 2389; (7) 40 Cyc. 2389. As to admissibility in evidence against third persons of books, reports and the like, other than books of account, see 125 Am. St. 841. As to the right of a physician who attended the testator before his death to testify as to his mental condition, see Ann. Cas. 1912B 1039. As to the question what constitutes testamentary capacity or incapacity, see 27 L. R. A. (N. S.) 2.

