## DAVIS, EXECUTOR, ET AL. *v.* BABB ET AL.

[No. 23,259.   Filed December 12, 1919.   Rehearing denied January 27, 1921.]

1.  APPEAL.—*Juries.*—*Performance of Duties.*—*Presumptions.*— *Misconduct.*—Juries are presumed to do their duty, and a charge of misconduct must be affirmatively shown by the facts. p. 178.

2.  APPEAL.—*Review.*—*Harmless Error.*—*Answers to Interrogatories.*—It is immaterial that answers to interrogatories returned by the jury are without support in the evidence, unless the same insufficiency of evidence serves to overthrow the general verdict.   p. 178.

3.  APPEAL.—*Review.*—*Evidence.*—*Sufficiency.*—T h e   sufficiency of the evidence to sustain a verdict on appeal depends solely on the presence in the record of some competent evidence which tends to support the verdict.   p. 179.

4.  APPEAL.—*Review.*—*Evidence.*—*Sufficiency.*—*Scope of Review.* —In determining whether the evidence is sufficient to sustain the verdict, the court on appeal will consider not only the positive testimony of the witnesses, but also such inferences as flow naturally from the established facts.   p. 179.

5. WILLS.—*Contest.—Undue Influence.—Evidence.*—The exercise of undue influence over testator may be shown by circumstantial evidence, and the provisions of the will and the circumstances attending its execution may be sufficient to warrant a finding against its validity.   p. 179.

6. WILLS.—*Contest.—Undue Influence.—Evidence.—Sufficiency.* —In the contest of a will on the ground of undue influence, it is not necessary to prove that overt acts of undue influence were exercised at the exact time of the execution of a will, but it is sufficient to show that such influence had been acquired previously, and did operate at the time the will was made. p. 180.

7. WILLS.—*Contest.—Undue Influence.—Evidence.*—In the contest of a will on the ground of undue influence, the evidence required to establish undue influence need not be of that direct affirmative and positive character which is required to establish a tangible physical fact, the only positive and affirmative proof required being of facts and circumstances from which undue influence may be reasonably inferred.   p. 180.

8. WILLS.—*Contest.—Insanity.—Parties as Witnesses.—Competency.*—In the contest of a will involving the issue of testatrix's sanity, relatives of testatrix who were parties to the action were competent to testify in regard to all matters, including those occurring during the lifetime of testatrix, bearing upon the question of her sanity.   p. 181.

9. WILLS.—*Contest.—Undue Influence.—Evidence.—Admissibility.*—In an action to contest a will on the ground of undue influence statements and assertions attributed to the person alleged to have exerted the undue influence which tend to show that such person did exert a controlling authority over testatrix and that it was his purpose to keep her under his control, were admissible as bearing on his conduct, character and intentions.   p. 182.

10. W I L L S.—*Contest.—Undue Influence.—Evidence.—Admissibility.*—In the contest of a will on the ground of undue influence, the character of the proponents and beneficiaries, the interest or motive on their part to unduly influence the testator, and facts and surroundings giving them an opportunity to exercise such influence may properly be considered.   p. 182.

11. WILLS.—*Contest.—Undue Influence.—Declarations Showing Intention to Exert.—Admissibility.*—In an action to contest a will on the grounds of undue influence any declarations of a proponent or beneficiary evidencing some intention to unduly influence testator are admissible.   p. 182.

Davis, Exr., v. Babb—190 Ind. 173.

12. WILLS.—Contest.—Harmless Error.—Admission of Evidence.
—In an action to contest a will on the ground of undue influ-
ence, error, if any, in refusing to strike out an answer in a dep-
osition as to a conversation between the witness and the
executor, who was charged with having exerted undue influ-
ence over testatrix, was harmless, where the executor testified
that the statements made in such answer were substantially
true. p. 183.

13. WILLS.—Contest.—Undue Influence.—Evidence.—Character
of Proponent.—In an action attacking the validity of a will on
the ground of undue influence, evidence to show the character,
nature and disposition of the proponent is admissible. p. 183.

14. WILLS.—Contest.—Undue Influence.—Rebuttal Evidence.—
Scope.—In an action to contest a will on the ground of undue
influence it was not error to permit a witness testifying in re-
buttal to deny proponent's statement as to whether he and
testatrix were to be married. p. 183.

15. TRIAL.—Admission of Evidence in Rebuttal.—Discretion of
Court.—It is within the discretion of the trial court to admit
or exclude in rebuttal evidence which should have been given
in chief. p. 184.

16. WILLS.— Contest.— Mental Incapacity.— Evidence.— Finan-
cial Condition of Testatrix's Relatives.—In an action to set
aside a will on the ground of mental incapacity, testimony by a
brother of testatrix as to statements made by himself to testa-
trix concerning his financial condition was admissible to show
whether testatrix made a natural or unnatural disposition of
her estate, which circumstance was a proper one to be con-
sidered as bearing upon the issue of insanity. p. 184.

17. WILLS.—Contest.—Mental Incapacity.—E v i d e n ce.—Testi-
mony by Heir.—In an action to set aside a will on the ground
of mental incapacity, a brother of testatrix was competent to
testify to any fact or circumstance within his knowledge bear-
ing upon the issue of insanity, although not asked to express
an opinion as to the sanity of testatrix. p. 184.

18. WITNESSES.—Examination.—Responsiveness of Answers.—
In an action to contest a will on the ground of mental incapacity
and undue influence, where a witness, testifying as to certain
statements made by testatrix, was asked to tell, "what you
heard her say, using her own language as near as you can" an
answer that "She wanted her property to go to" two named
persons, was responsive to the question. p. 185.

19. WILLS.—Contest.—Mental Incapacity.—Undue Influence.—
Evidence.—Admissibility.—Testatrix's Fear of Proponent.—In
a suit to set aside a will on the ground of mental incapacity

and undue influence, evidence that testatrix had stated at different times that she feared the proponent of the will was competent as to her mental condition at the time she executed the will. p. 186.

20. APPEAL. — *Review.* — *Instructions.* — *Repetition.*— The mere repetition of an instruction is not error. p. 188.

21. APPEAL.—*Review.*—*Instructions.*—*Repetition.*—Repetition of a correct proposition of law in a charge to the jury in a civil case is harmless. p. 188.

22. WILLS.—*Contest.*—*Undue Influence.*—*Instructions.*—In an action to set aside a will on the ground of undue influence, an instruction that "if you find from the evidence" that testatrix at the time she executed the will was not acting as her own free agent, but was under the influence of the proponent, etc., *held* not objectionable as assuming undue influence on the part of proponent. p. 188.

23. WILLS.—*Contest.*—*Undue Influence.*—*Instructions.*—*Failure to Define Undue Influence.*—In an action to set aside a will on the ground of undue influence, an instruction that the will was void if testatrix was unduly influenced by the proponent of the will in making disposition of her estate, *held* not erroneous as failing to define undue influence, where such definition was supplied by other instructions given. p. 189.

24. WILLS.—*Contest.*—*Mental Incapacity.*—*Undue Influence.*— *Instructions.*—*Omissions.*—*Cure by Other Instructions.*—In an action to contest a will and a codicil thereto on the ground of mental incapacity and undue influence, an instruction, that the will was void if testatrix had been unduly influenced by the proponent of the will in disposing of her property, was not erroneous because failing to inform the jury that the execution of the codicil might validate the will, where the jury was so informed by another instruction. p. 189.

25. WILLS.—*Contest.*—*Mental Incapacity.*—*Instructions.*—*Unnatural Disposition of Property.*—In an action to set aside a will on the ground of mental incapacity, an instruction that an unnatural disposition of property by a testator could be considered in determining testamentary capacity, *held* not erroneous as invading the province of the jury, in view of evidence making it a question for the jury whether the will was unnatural on its face. p. 190.

26. APPEAL.—*Review.*—*Instructions.*—*Preponderance of Evidence.*—*Province of Jury.*—An instruction that the preponderance of the evidence does not depend upon the number of witnesses, and does not mean the greater number of witnesss, but does depend on the weight of the evidence, is not erroneous as invading the province of the jury. p. 191.

From Bartholomew Circuit Court; *John W. Donaker,* Judge.

Action by Joseph Babb and others against William H. Davis, executor of the last will of Mary L. Taylor, deceased, and others. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*Dixon & Meloy, Montgomery & Montgomery* and *Kollmeyer & Sharpnack,* for appellants.

*Pogue, Hoffheimer & Pogue, Korbly & McNutt, James F. Cox* and *A. W. Phillips,* for appellees.

WILLOUGHBY, J.—This was a suit to test the validity of a will and codicil of one Mary L. Taylor. The complaint was in one paragraph, and alleged that on May 16, 1914, an instrument in writing, bearing date March 12, 1906, and purporting to be the last will and testament of said Mary L. Taylor, and also an instrument in writing, bearing date of May 1, 1913, and purporting to be a codicil to said pretended last will and testament, were both produced before the clerk of the Jennings Circuit Court, and were then and there admitted to probate as the last will and testament and codicil thereto of said Mary L. Taylor; that one William H. Davis was appointed executor of said will and codicil, who accepted the trust and qualified as such executor; and the complaint further alleges that the instrument in writing so admitted to probate as the last will and testament of said Mary L. Taylor, deceased, was not her will, and that said instrument in writing and so admitted to probate as a codicil to said will is not a codicil to said will, and that the probate of both said pretended will and pretended codicil should be revoked for the reason that at the date of the execution of said pretended will and at the date of the execution of said pretended codicil said Mary L. Taylor was of

unsound mind, and incapable of making said will or codicil; that said pretended will and said codicil were both unduly executed, and were executed under duress.

The defendants answered said complaint by general denial. There was a trial by jury and a verdict in favor of appellees, finding that the said Mary L. Taylor, at the time of making said will and at the time of making the codicil thereto, was of unsound mind, and that the will and codicil were procured by undue influence and under duress; and on this verdict the court rendered a judgment, reciting that at the time of making said will and said codicil Mary L. Taylor was of unsound mind and incapable of making a will and codicil, and that the probate of said will and codicil be set aside and vacated. From this judgment the appellants appeal, and assigned as error that the circuit court erred in overruling the motion of appellants for a new trial.

The jury by answering interrogatory No. 1 found that the testatrix, Mary L. Taylor, was of unsound mind May 1, 1913, at the time of executing the codicil in suit. The jury also found by answering interrogatory No. 2 that the testatrix on May 1, 1913, at the time of executing the codicil to the will in suit, was controlled by undue influence. The appellants claim in the motion for a new trial that the jury made incorrect and untrue answers to interrogatories, and that such answers constituted a charge of misconduct of the jury within the meaning of §585 Burns 1914, §559 R. S. 1881.

This position cannot be maintained. Juries are presumed to do their duty, and a charge of misconduct must be affirmatively shown by the facts. *M.*

1-2. *O'Connor & Co.* v. *Gillaspy* (1908), 170 Ind. 428, 435, 83 N. E. 738. If the answers to interrogatories returned by the jury are without support in the evidence, that fact is of no importance unless the same

insufficiency of evidence serves to overthrow the general verdict. *Chicago, etc., R. Co.* v. *Cobler* (1909), 172 Ind. 481, 87 N. E. 981; *Board, etc.* v. *Nichols* (1894), 139 Ind. 611, 620, 38 N. E. 526; *Burkhart* v. *Gladish* (1890), 123 Ind. 337, 344, 24 N. E. 118; *Aufderheide* v. *Rohr* (1918), 187 Ind. 205, 118 N. E. 823.

The appellants contend that the verdict of the jury is not sustained by sufficient evidence. The sufficiency of the evidence to sustain a verdict on appeal depends solely on the presence in the record of some competent evidence which tends to support that verdict. *Young* v. *Older* (1915), 183 Ind. 646, 649, 109 N. E. 909; *City of Bloomington* v. *Moore* (1915), 183 Ind. 283, 287, 109 N. E. 42; *Pence* v. *Myers* (1913), 180 Ind. 282, 285, 101 N. E. 716. In determining whether the evidence is sufficient to sustain the verdict of the jury, this court will consider, not only the positive testimony of the witnesses, but also such inferences as flow naturally from established facts. *Chicago, etc., R. Co.* v. *Lake Co. Savings, etc., Co.* (1917), 186 Ind. 358, 362, 114 N. E. 454; *Southern Product Co.* v. *Franklin Coil Hoop Co.* (1915), 183 Ind. 123, 124, 126 N. E. 872.

The evidence in this case is too voluminous to set out in this opinion. The appellants introduced 129 letters written by testatrix to William H. Davis between the time of Edmund Babb's death and the death of testatrix. In our opinion there is some evidence to support every material allegation of the complaint. The issue of undue influence joined in this case, like other questions, must be determined from all the facts and circumstances given in the evidence. The ultimate inference of undue influence, or its absence, was one of fact to be drawn by the jury, and not to be declared by the court as a matter of law. The

exercise of undue influence may be shown by circumstantial evidence, and the provisions of the will and the circumstances attending its execution may be sufficient to warrant a finding against its validity. *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 436, 90 N. E. 766.

Such is the nature of the human mind that, when it has been habituated to the influence of another, it will yield to that influence and suffer it to have its effect, although the person in the habit of its exercise may not be present or exert it at the time an act is done. It may happen that the fruit of an evil and improper influence is born long after the influence is exerted. *Taylor* v. *Wilburn* (1855), 20 Mo. 306, 64 Am. Dec. 186; *Lisle* v. *Couchman* (1912), 146 Ky. 345, 142 S. W. 1023.

Undue influence need not be proved by direct and positive evidence, but it may be inferred from or shown by the facts and circumstances in evidence. Nor 6. is it necessary that the overt acts of undue influence should have been exercised at the exact time of the execution of the will and codicil, but it is sufficient to show that such influence over the mind of the testator had been acquired previously and did operate at the time the will and codicil were made. *Mowry* v. *Norman* (1907), 204 Mo. 173, 193, 103 S. W. 15.

In the contest of a will on the ground of undue influence, the evidence required to establish the undue influence need not be of that direct, affirmative and 7. positive character which is required to establish a tangible physical fact. The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred. *Blackman* v. *Edsall* (1902), 17 Colo. App. 429, 68 Pac. 790.

In the case just cited, *Blackman* v. *Edsall, supra,* the court said: "The chief complaint and contention of the

proponent is that the evidence presented and upon which the jury based its verdict sustaining the charge of undue influence was insufficient by reason of its lacking in that affirmative and positive character which is claimed to be necessary. It follows from the very nature of the thing that evidence to show undue influence must be largely in effect circumstantial. It is an intangible thing which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact universally recognized that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery or other methods to obtain power and control over the will of another and direct it improperly to the accomplishment of the purpose which he desires." And again in the same case the court said: "Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. As to what is sufficient must depend upon the facts and circumstances of each particular case."

Appellants contend that John P. Babb, a brother of testatrix, Lucy Boyd and Harriet B. Sargent, nieces of testatrix, were not competent witnesses to testify to matters occurring during the lifetime of testatrix. The sanity of testatrix was in issue in this case, and such evidence was competent on that issue. When the sanity of a testator is in question, the fact of the sanity or insanity of such person is a matter which is open to the observation of the public. And it is competent for these witnesses, although parties to the

suit, to testify in regard to all matters bearing upon the question of the sanity of the testatrix.

Appellants in their brief, under point 3, assert that many prejudicial and harmful statements and declarations attributed to William H. Davis, executor of the will, were admitted in evidence over the objections of the defendants. It appears from the nature of the alleged "prejudicial and harmful statements and declarations," attributed to William H. Davis and admitted in evidence that they consisted of statements and assertions during the life of testatrix amounting to verbal acts and conduct having a tendency to show that William H. Davis did exert a controlling authority over the testatrix and that there was a purpose on his part to keep the testatrix under his control. This was admissible as evidence bearing on the conduct, character and intentions of the party charged with undue influence in this case. Its admission was not error. See Hayes v. Burkam (1879), 67 Ind. 359; Lewis v. Mason (1872), 109 Mass. 169.

As circumstances tending in a slight degree to furnish ground for inference of fraud or undue influence, it is proper to consider the character of the proponents and beneficiaries, and interest or motive on their part to unduly influence the testator, and facts and surroundings giving them an opportunity to exercise such influence. Any declarations of a proponent or beneficiary evidencing some intention to unduly influence the testator are admissable. 40 Cyc 1162, 1163, and cases there cited. Lewis v. Mason, supra; May v. Bradlee (1879), 127 Mass. 414; Estate of Arnold (1905), 147 Cal. 583, 82 Pac. 252; Estate of Snowball (1910), 157 Cal. 301, 107 Pac. 598; Wilbur v. Wilbur (1891), 138 Ill. 446, 27 N. E. 701.

Appellants claim that the court erred in overruling defendant's motion to strike out and suppress a part

of the deposition of Carrie Rawson Davis. The part moved to be stricken out is in answer to question 21 of said deposition. Question 21 asks for a conversation between Carrie Rawson Davis and William H. Davis concerning the testatrix. Bearing in mind the fact that the evidence clearly discloses that said William H. Davis was the person charged by appellees with unduly influencing the testatrix, the answer to this question would be proper under rule laid down in the authorities above cited. But, even if error was committed in overruling such motion, such error was cured by the testimony of said William H. Davis in which he testifies that the statements made by said witness in said deposition were substantially true as stated by her. Appellant cannot successfully claim reversible error in this matter, for the reason that evidence of the witness tended only to prove an admitted fact. *Stewart* v. *Stewart* (1911), 175 Ind. 412, 94 N. E. 564; *Chicago, etc., R. Co.* v. *Wolcott* (1895), 141 Ind. 267, 39 N. E. 451, 50 Am. St. 320.

The motion to strike out and suppress parts of the deposition of the witness Junior Hooper was correctly overruled. The part sought to be stricken out was admissible to show the character, nature and disposition of the proponent, William H. Davis. The motion to strike out and suppress part of the depositions of Doctor Duell Gann and Mrs. Duell Gann were correctly overruled for the same reason. The appellants also objected to the following question propounded to Hattie B. Sargent while testifying in rebuttal. "Miss Sargent, I will ask you whether or not in the year 1911, at the Anderson Hotel in the city of Cincinnati, you went into the hall of the hotel there one evening and saw William H. Davis sitting there and did you say to him, 'What is the cause for your looking so downhearted or depressed,' and he said,

'Oh, Aunt Mary says the neighbors down there are claiming we are going to get married, the old fool,' or words to that effect." William H. Davis had testified in regard to this matter and it was not improper to permit the witness in rebuttal to deny his statements. It may be observed in this connection that there was evidence from which the jury may have reasonably inferred that William H. Davis had led the testatrix to believe that he wanted to marry her.

Appellants also claim that the court erred in permitting plaintiff, as a matter of rebuttal, to introduce in evidence a letter from testatrix to Lucy Boyd. 15. There is no error in this. It is within the discretion of the trial court to admit or exclude in rebuttal evidence which should have been given in chief. *Stalker* v. *Breeze* (1917), 186 Ind. 221, 114 N. E. 968.

Appellants contend that the court erred in overruling defendants' motion to suppress and strike out the several questions and answers of John P. Babb 16. contained in his deposition, alleging that said witness was incompetent to testify to matters happening before the death of testatrix. These questions and answers related to conversations and correspondence with the testatrix and several business transactions, including statements concerning the financial condition of said witness, John P. Babb. This motion was correctly overruled. John P. Babb was a brother of the testatrix, and in determining whether the will was a natural or an unnatural one the jury had a right to know the financial circumstances of John P. Babb. This was proper under the issue of insanity of testatrix, and the witness had a right 17. to detail in his testimony any fact or circumstance within his knowledge bearing upon such issue of insanity, although the witness was not asked to express his opinion upon the sanity of the testatrix. The court

did not err in overruling this motion. *Gurley* v. *Park* (1893), 135 Ind. 440, 35 N. E. 279; *Lamb* v. *Lamb* (1886), 105 Ind. 456, 5 N. E. 171.

Appellants claim that the court erred in overruling appellants' motion to strike out the answer of Grace Ledke as follows: "She wanted her property to go to Miss Hattie Sargent and Mrs. Lucy Boyd."

The reason given by appellants for striking out said answer is that it was not responsive to the question asked. The question to which this is an answer was: "Instead of summing up in your mind and stating what she was talking about, you just tell these men here what you heard her say, using her own language as near as you can." Answer. "She wanted her property to go to Miss Hattie Sargent and Mrs. Lucy Boyd." We think this answer to the question clearly states what she said upon that occasion, and was responsive to the question propounded. The motion was properly overruled. This witness, Grace Ledke, then went on to state that: "Mr. Davis said Hattie Sargent was a spendthrift and if she thought anything of Mrs. Taylor she would be down there taking care of her; that Mr. Davis said, leave the property to him and he could relieve her of all trouble and would take care of her and she would have no business troubles if she would make the will to him." Witness then said "I don't remember anything he said after this. I helped her dress and got her some hot water before she went away. She said she was going to Vernon to Judge Bachelor's to transact a little business. Mr. Davis went with her in Mrs. Taylor's buggy. They got in the buggy in front of her front door. They remained away until some time in the afternoon. Mr. Davis helped her in the buggy; she seemed very much worried and was crying. Mr. Davis did the driving. It was about a mile or a mile and a half to Vernon. After they returned and after

Mr. Davis had left she came into our part of the house and said she feared Mr. Davis, and could not trust him. She took her meals once in a while after that with us. I think it was a week or two afterwards before Mr. Davis came back, and stayed from Saturday until Monday. I saw them in the yard together, sometimes sitting down and sometimes walking. He would have his arm around her. We remained on the Babb farm until fall. We left in October or November. Mrs. Taylor told me Mr. Davis wanted her to make her will to him, but she wanted to leave her money to Hattie Sargent and Lucy Boyd. This was after I heard them when they were sitting on the bench. She said she would not make her will to Mr. Davis as she did not trust him."

Appellants' brief does not disclose any objection or exception to this part of the testimony of the witness.

19. It appears from the testimony of several witnesses that at different times the testatrix said she feared Mr. Davis. These statements of hers are competent to go to the jury for the purpose of determining the condition of her mind as to soundness or unsoundness at the time of the making of the will and codicil. The evidence in this case discloses that from the time of the death of the brother of the testatrix, Edmund Babb, about March, 1906, to the time of her death in 1914, William H. Davis was making frequent visits to her home at North Vernon; that he directed her business; that he used persuasion, and when persuasion failed ordered her to do things demanded by him. The evidence shows that she was under his control. She was more than sixty years of age at the time of her brother's death. Immediately after her brother's death this man Davis took charge of her affairs. It was he that procured her to execute a trust deed to himself. It was he who talked with her about the disposition of her property, wrote out her will, at

least made notes of it, went with her to have it executed, took it to Cincinnati and locked it up in a safety deposit box, to which he had the key. It is true the evidence discloses that Mrs. Taylor also had a key. It also discloses that she lived at North Vernon; that Mr. Davis lived at Cincinnati; that he had the will in his control during all this time, and that when she desired to execute a codicil to the will she had to wait until she could get the will from Cincinnati from him for that purpose. When executed, the will and codicil were again taken back to Cincinnati and locked up in this safety deposit box to which Mr. Davis held the key. After the funeral, which he attended, Davis went to Cincinnati and got the will and codicil and presented them for probate in Vernon, where they were probated. The will shows that the bulk of the property was left to the children of William H. Davis. He was executor of the will and trustee in the trust deed which she had executed to him. He was proponent of the will and under the circumstances it is proper in this case that the jury should know all the facts concerning his relation to the testatrix and her condition of mind in order that they might be able to ascertain whether she had sufficient mental competency to execute the will and codicil, or whether she possessed testamentary capacity. They would also have a right to take into consideration the fact, if they should find it to be a fact, that her mind was weak; that she was under the domination and control of William H. Davis; that when he ordered her to do anything, suggested it, or indicated the advisability of it, her mind was too weak to resist his importunities; that she did as he required her to do, although when she was away from him she would regret her action, and frequently made the statement "that she was afraid of him." Such statements go to her testamentary capacity.

The appellants say that the court, at defendants' request, gave instruction No. 4, defining testamentary capacity, and then at plaintiffs' request repeated the same in substance with more or less inaccuracies five times, and says that the repetition of these instructions in the form given was error. Appellants do not point out what the inaccuracies are of which they complain, and the court has not been able to discover any such inaccuracies. The mere repetition of an instruction is not error. The repetition of a correct proposition of law in a charge to a jury in a civil case is harmless. *Public Utilities Co.* v. *Handorf* (1916), 185 Ind. 254, 266, 112 N. E. 775; *Terry* v. *Davenport* (1908), 170 Ind. 74, 77, 83 N. E. 636; *Coffman* v. *Reeves* (1878), 62 Ind. 334, 335.

Appellants insist that it was error to give instruction No. 18, which reads as follows: "If you find from the evidence in this case that at the time Mary L. Taylor executed the pretended will mentioned in the complaint she was not acting as her own free agent, but was at that time under the influence of William H. Davis, and that William H. Davis did in fact unduly influence said Mary L. Taylor to dispose of her property or any part of it in a manner other and different from the way she would have disposed of it but for this undue influence, then I charge you that said pretended will is void and of no force and effect." Appellants said that this instruction assumes undue influence on the part of William H. Davis. In this appellants are mistaken, as the instruction says, "If you find from the evidence in this case, etc.," and leaves the fact whether or not undue influence existed on the part of William H. Davis to be found by the jury.

Appellants also claim that said instruction does not define undue influence. It was not necessary that it should, because the court gave instructions Nos. 5 and 6,

which read as follows: No. 5. "Advice, per-suasion or entreaty does not constitute undue influence, but undue influence that will be sufficient to vitiate a will within the meaning of the law must be such in every case as in some degree to destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse or too weak to resist."

No. 6. "The burden rests upon plaintiffs to prove by a preponderance of evidence in this case in order to invalidate the will and the codicil in suit on the ground of undue influence or duress that at the time of the execution of both the will and the codicil such undue influence was directly connected with their execution and operated at the time the same were made. It must be an influence of such compelling force as to make it appear that the testatrix, Mary L. Taylor, was but the instrument by which the mastering desire of another was expressed, so that the will in suit and codicil thereto are not the will and codicil of said Mary L. Taylor, except in the sense that she consented to put her name to them in the form in which they appear." As a part of its series of instructions, these instructions fully define undue influence. Instructions Nos. 19 and 20 also define undue influence.

Appellants also assert that this instruction does not explain that the execution of the codicil would validate such will, but instruction No. 10, given by the court, does make such explanation. Instruction No. 10 is as follows: "Although you should find the fact to be that the original will in suit was executed on March 12, 1906, and that at the time of executing the same said Mary L. Taylor was of unsound mind or was acting under duress or from undue influence, but you further find that on or about May 1, 1913, she duly executed a codicil to said former will changing some of its

provisions and at the time of executing said codicil she was free from duress and undue influence and was of sound mind, then you are instructed that the execution of such codicil would be in law a republication and confirmation of the original will and free it from the objections to which it was liable at its execution, and your verdict should be for defendants."

To instructions Nos. 19, 22 and 23, appellants make substantially the same objections as they do to instruction No. 18, and for reason stated by the court in discussing instruction No. 18 the court holds that appellants' objections are without foundation.

Appellants assert that instruction No. 24 is a long argumentative, confusing and misleading instruction, and is accordingly erroneous. Appellants fail to point out anything in said instruction which is misleading, or confusing, or argumentative, and the court has been unable to find anything in said instruction which appears to be confusing or misleading. It seems to be a plain statement of the law relating to the effect of any undue influence of William H. Davis in procuring the execution of the will and codicil in controversy, in case the jury should find as a fact that he did exercise an undue influence over the testatrix in preparing her will and codicil to such an extent that he prevented her from acting as her own free agent in the preparation of the will and codicil, and caused her to execute said will and codicil in a manner other and different from what she would have executed it but for said undue influence.

Appellants insist that instruction No. 25, which reads as follows:—"It is the law and I so instruct you that an unnatural disposition of property by a testator may be considered by the jury in determining the testamentary capacity of such testator" —is erroneous because the will in suit is not unnatural upon its face, and that there is no evidence tending to

Davis, Exr., v. Babb—190 Ind. 173.

show that it was unnatural in fact, and for that reason it invades the province of the jury. The question whether the will in suit was unnatural upon its face or unnatural in fact were questions for the jury to determine from the evidence adduced, and from an examination of the will itself. The will is in evidence and shows that the greater part of testatrix's property was left to the children of William H. Davis, and other evidence shows that they were in good financial circumstances, and not the nearest relatives of the deceased; that she had a brother living, who was in straitened circumstances; that she had nieces who were depending upon their earnings for support, and to whom this will gave very little property. This evidence should be considered by the jury in determining whether or not her action in making the will and codicil as they were made was natural or unnatural, reasonable or unreasonable, and by this instruction the whole subject was left as a matter of fact to be determined by the jury. This instruction was not erroneous.

Appellants also complain of instruction No. 28, which reads as follows: "The preponderance of the evidence does not depend upon the number of witnesses, and does not mean the greater number of witnesses. It does depend upon the weight of the evidence." Appellants assert that this instruction invades the province of the jury, but admit that it has been approved by this court. This instruction is not erroneous. *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518, 72 N. E. 571; *Barnes* v. *Phillips* (1916), 184 Ind. 415, 111 N. E. 419.

We have examined all errors assigned and properly presented in appellants' brief, and find no reversible error in the record. The case seems to have been fairly tried, and a correct result reached.

Judgment affirmed.