ISENHOUR *v.* SPEECE, ADMINISTRATOR OF THE ESTATE OF SPEECE, DECEASED, ET AL.

[No. 29,682. Filed June 3, 1958.]

*Ralph F. Mattingly* and *John D. Staggenburg,* both of Anderson, for appellant.

*Johnson & Austin,* of Anderson, for appellees.

EMMERT, J.—This is an appeal from a judgment setting aside two deeds for various tracts of real estate, executed by Charles Morris Speece, and setting aside transfers of certain checking, savings, and building and loan accounts previously owned solely by said decedent, in the total sum of $23,702.94. The error charged is the overruling of appellant's motion for a new trial.

The complaint was in two paragraphs, the first charging fraud and undue influence by appellant and seeking to recover personal property consisting of checking accounts, savings accounts, and building and loan accounts, for the use of Cary Vern Speece, Administrator of the Estate of Charles Morris Speece. The second paragraph sought to set aside a warranty deed, executed by said decedent on March 29, 1952, to his daughter, Clara Isenhour, for ten separate tracts of real estate; and also to set aside a warranty deed, executed by the decedent on April 4, 1952, for a 160-acre farm then in the possession of Cary Vern Speece. This paragraph also charged fraud and undue influence.

The third paragraph of complaint was for a restraining order against the financial institutions, upon which a restraining order was issued. The issues on this are not involved in this appeal.

A jury was impaneled to advise the court in the premises in equity, and it answered the following interrogatories:

" 'Was undue influence or fraud used by the defendant as alleged in paragraph number one?'
"Answer 'Yes.'
" 'Was undue influence or fraud used by the defendant as alleged in paragraph number two?'
"Answer 'Yes.' "

The court then made a general finding for the plaintiffs, Cary Vern Speece as the Administrator of the Estate of Charles Morris Speece, Cary Vern Speece, and Clarence Edward Speece, on the first and second paragraphs of complaint, and the judgment set aside a transfer of the checking accounts, savings accounts and building and loan stock accounts, and ordered them vested in the Administrator. The court also set aside both warranty deeds, and appointed a Commissioner to retake and convey title to the name of the decedent, Charles Morris Speece. No question is raised as to the form of this remedy.

The motion for a new trial challenges the sufficiency of the evidence to sustain the finding of the court. In determining whether the finding was supported by sufficient evidence, it is well settled on appeal we will consider only the evidence which tends to support the finding, together with the reasonable, natural and logical inferences which may be drawn therefrom. *Davis, Exr.* v. *Babb* (1919), 190 Ind. 173, 179, 125 N. E. 403.[1]

---

1. "On appeal, when the sufficiency of the evidence is questioned, this court will disregard conflicting evidence, and assume that the evidence to support the finding is true, 'and will give to it every favorable inference which may be reasonably and fairly drawn from it. *Mazelin* v. *Rouyer* (1893), 8 Ind. App. 27, 35 N. E. 303; *Chicago, etc. R. Co.* v. *Vanderburg* (1905), 164 Ind. 470, 73 N. E. 990.' *Klingaman* v. *Burch* (1940), 216 Ind. 695, 699, 25 N. E. 2d 996." *Stayner* v. *Nye* (1949), 227 Ind. 231, 234, 85 N. E. 2d 496.

"The sufficiency of the evidence to sustain a verdict on appeal depends solely on the presence in the record of some competent evidence which tends to support that verdict. *Young* v. *Older* (1915), 183 Ind. 646, 649, 109 N. E. 909; *City of Bloomington* v. *Moore* (1915), 183 Ind. 283, 287, 109 N. E. 42; *Pence* v. *Myers* (1913), 180 Ind. 282, 285, 101 N. E. 716. In determining whether the evidence is sufficient to sustain the verdict of the jury, this court will consider, not only the positive testimony of the witnesses, but also such inferences as flow naturally from established facts. *Chicago, etc., R. Co.* v. *Lake Co. Savings, etc., Co.* (1917), 186 Ind. 358, 362, 114 N. E. 454; *Southern Product Co.* v. *Franklin Coil Hoop Co.* (1915), 183 Ind. 123, 124, 126 N. E. 872." *Davis, Exr.* v. *Babb* (1919), 190 Ind. 173, 179, 125 N. E. 403.

There was ample evidence to sustain the court's finding on both paragraphs of complaint. At the time the transfers were made the decedent was 82 years of age. His wife had died in 1921, and their only heirs at law were three children who survived Charles Morris Speece: two sons, Cary Vern Speece and Clarence Edward Speece, and a daughter, Clara Isenhour. Until 1939 appellant and her husband had lived with the decedent, but they had some sort of a controversy and the decedent made them move away. From that time on he lived alone in his own house.

He became dirty and unkempt, his hair and beard becoming long in the wintertime, and his clothes were filthy. His shoes needed soles. His home stank so that the deputy assessor could hardly remain long enough to take his assessment. He had a stove, and the ashes were spilled upon the floor. He had an old-fashioned refrigerator which never had ice in it. The bread was mouldy and the milk not refrigerated. Dirt and filth accumulated on the floor. The coffee pot was dirty. From 1939 to his death the house had only been cleaned once. The old gentleman, instead of going to the inside toilet, was accustomed to answer his calls of nature on the front porch or the back yard. He was stingy and close. He had $4,000 hidden in the floor of his basement. He was robbed of this.

His legs became so weak he had trouble walking about, and his eyesight so bad he could hardly sign a receipt for the rent money. The appellant brought her leftover food to her father to eat, but the dishes went unwashed. The trial court had the right to find that she received at least $10.00 a week rent for this. The court was justified in finding there was no consideration for the deeds and gifts of personal property.

His son, Cary Vern Speece, had lived on the 160-acre farm for a long time, paid the taxes on it, made improvements thereon, and many times the decedent said he was to have the farm. He said his children were to be well provided for.

When the deputy assessor came to his house decedent had difficulty in signing his tax schedule. In 1953, which was after he had conveyed all his real estate, he said he owned real estate. During the last six years of his life he did not have sufficient comprehension or memory to understand what the assessor was saying to him.

After he had conveyed away all of his real estate he said, "everyone knows that Vern will get the farm and I am trying to divide the rest to my children."

After the warranty deeds had been executed the appellant told the deputy assessor that her father owned the property and that she took care of it for him. On Sunday, April 17, 1955, a short time before the trial, she made conflicting statements about the financial transactions involved; that he deeded the property to her and she did not know it, although she had recorded the deed to the 10 tracts in 1952, but failed to record the deed to the 160-acre farm until after his death, which was on June 20, 1954. She further said, "We made daddy deed us the property."

There was opinion testimony that the decedent was a person of unsound mind both before and after the execution of the deeds and the execution of the joint checking, savings, and building and loan accounts, which carried the right of survivorship to appellant.

The court was fully warranted in finding that decedent had placed great confidence and trust in his

daughter Clara Isenhour, and that thereby a fiduciary relationship came into existence which she was under a legal duty not to breach. Appellant presented to the Anderson Banking Company a transfer card for a savings account, but the decedent's signature was so illegible they would not accept it without seeing him, which they did at his home. The witness Robey testified he asked the decedent, "Do you understand what I asked?" And he said, "Yes, I do, and I wish to do it that way." It is our opinion that it was the function of the trial court to give this testimony such weight as the court thought it deserved. It does not conclusively compel the inference that the decedent was a person of sound mind, that he knew the nature and extent of his property, and the natural objects of his bounty, or that the undue influence of his daughter was not operating upon his mind at the time. *Thorne* v. *Cosand* (1903), 160 Ind. 566, 569, 67 N. E. 257. Old people who are weak and enfeebled in body and mind often make affirmative answers to questions which they would not so answer if they were younger, with better mental faculties, and free of the dominating influence of the grantee.[2]

Several times this court has quoted with approval the language of Mr. Justice Field on undue influence in *Allore* v. *Jewell* (1877), 94 U. S. 506, 511, 24 L. Ed. 260, 263, as follows:

"It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the

---

2. "Such is the nature of the human mind that, when it has been habituated to the influence of another, it will yield to that influence and suffer it to have its effect, although the person in the habit of its exercise may not be present or exert it at the time an act is done. It may happen that the fruit of an evil and improper influence is born long after the influence is exerted. *Taylor* v. *Wilburn* (1855), 20 Mo. 306, 64 Am. Dec. 186; *Lisle* v. *Couchman* (1912), 146 Ky. 345, 142 S. W. 1023." *Davis, Exr.* v. *Babb* (1919), 190 Ind. 173, 180, 125 N. E. 403.

time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that, from her sickness and infirmities, she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances, imposition or undue influence will be inferred."

This law was approved in *Ashmead* v. *Reynolds* (1893), 134 Ind. 139, 143, 33 N. E. 763, and more recently in *Stayner* v. *Nye* (1949), 227 Ind. 231, 236, 85 N. E. 2d 496. There was no error in overruling the motion for a new trial on the sufficiency of the evidence to sustain the finding.

Appellant contends the court erred in sustaining an objection to further testimony of Ralph F. Mattingly concerning the execution of the deeds in controversy. Previously he had testified he prepared the deeds for the decedent, at his request, that he signed them, and he, Mattingly, was not acting as attorney for the appellant or her husband. After the witness had answered the deeds were signed by Charles Morris Speece, counsel for appellees Speece objected "to any further testimony concerning the execution of those deeds, while Mr. Mattingly was attorney for Mr. Speece," which was sustained by the court. No further questions were asked to which any objection was made, nor was there any offer to prove made. A proper question must be asked to present error on appeal for excluding evidence. *Pora* v. *State* (1936), 210 Ind. 428, 431, 199 N. E. 230; *Indianapolis, etc. Transit Co.* v. *Hall* (1905), 165 Ind. 557, 76 N. E. 242; *Heagy* v. *State ex rel. Forkner*

(1882), 85 Ind. 260; *City of Evansville* v. *Thacker* (1891), 2 Ind. App. 370, 28 N. E. 559.[3]

When an objection is made, the party producing the witness must make an offer to prove so that the trial court may be fully advised as to the relevancy and admissibility of the proposed testimony. *Public Service Comm.* v. *Indianapolis Rys.* (1947), 225 Ind. 656, 76 N. E. 2d 841; *Pirchio* v. *Noecker* (1948), 226 Ind. 622, 626, 82 N. E. 2d 838.

Before the amendment of Rule 1-5 (effective November 30, 1949), the offer to prove had to be made before the ruling of the court, but the rule still contemplates an offer to prove be made. If appellant wanted to assert error on appeal, her counsel should have asked a question, and after objection made, then made an offer to prove the substance of the witness's answer.

There was no offer to prove made in support of a question asked Iva Sexton, a witness for appellant, to which the court sustained an objection. There was no error in overruling the motion for new trial because of the court's rulings on objections to the admission of any evidence by either Ralph F. Mattingly or Iva Sexton.

---

3. "The question as to the competency of the physicians as witnesses to explain or deny the statements attributed to them is not presented. It was only in the course of an offer to prove that there was a tender of any such evidence. It is a settled rule of practice that there must be a question asked which is calculated to elicit the testimony excluded to present any question concerning the ruling. *Judy* v. *Citizen* (1885), 101 Ind. 18; *Higham* v. *Vanosdol* (1885), 101 Ind. 160; *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542; *Deal* v. *State* (1895), 140 Ind. 354. In *Judy* v. *Citizen, supra,* it was held that a ruling excluding testimony would not be reviewed where a witness was produced and, without addressing any question to him, an offer was made that the witness would testify to certain facts. That case and the one in hand are alike in principle." *Indianapolis, etc., Transit Co.* v. *Hall* (1905), 165 Ind. 557, 560, 76 N. E. 242.

Judgment affirmed.

Bobbitt, C. J., Landis and Arterburn, JJ., concur.

Achor, J., not participating.

NOTE.—Reported in 150 N. E. 2d 749.